| 12 | 469 |
| 85 | 706 |
| 86 | 707 |

| 12 | 469 |
| £127 | 106 |

No. 78.—The Administrators of HARRISON JONES, plaintiffs in error, *vs.* HAWKINS H. NUNN, defendant.

[1.] A party plaintiff in ejectment may recover against a tenant who is in possession, without claim of title, on his prior possession, even although he may have abandoned his possession, if such abandonment is made *animo revertendi.*

Ejectment, in Sumpter Superior Court. Tried before Judge TAYLOR.

This was an action of ejectment, brought by plaintiffs, to recover a lot in the Town of Americus, upon the following state of facts: Plaintiffs introduced Lott Warren, who testified that he (witness) purchased the lot on which is situate the premises in dispute, in the year 1835, of one Kenny, and thereupon went into possession of the premises. While in possession, he sold to Harrison Jones, the administrator; that after that, one James Bassey went into possession of the lot, under a contract for purchase and held the same under Jones for several years, making improvements, and erected a dwelling house. and other houses, then moved away; the premises remained unoccupied for several years, say four or five. The plaintiffs then proved by one Ronaldson and others, that one Edmnod Nunn, the father of the defendant, several years after the vacation of the premises by Bassey, went into possession thereof, and resided thereon for several years; also rented out the place, and made improvements thereon to the value of seven hundred dollars; then sold premises to witness, but subsequently rescinded the trade, saying that he

had taken advice of counsel, who informed him he had no title to the lot. That the said Nunn held possession four or five years, and that defendant moved into possession soon after, and that Edmond Nunn said he was willing to abandon the premises, "if Jones would charge him no rent;" and also by W. Harris, that the lot had been sold at Sheriff sale, as he understood; that defendant was still in possession. Plaintiffs also introduced letters of administration on the estate of Harrison Jones, deceased. Also, deed from Warren to Jones, dated 7th March, 1836, and then closed their case. Upon this state of facts, his Honor Judge *Taylor* then charged the Jury,

That the possession of Jones was not such as would entitle the plaintiffs to recover as his representatives ; that the deed from Warren to Jones, was not sufficient evidence of written title to authorize the plaintiffs to recover; that the possession of Warren and Jones at so remote a period, was not such a possession as would entitle the plaintiffs to recover, or establish a color of title, unsustained by a possession immediately preceding the commencement of this action, and of which plaintiffs had been ousted by the trespass of defendant ; and that such possession might have made Warren's deed to Jones a good title, and such an one as they could recover upon, under the deed; and that the Jury could not regard defendant as a trespasser, until plaintiffs proved themselves entitled to recover. To which said several charges, the plaintiffs excepted, and all the points in this charge are assigned for error.

T. R. R. Cobb, for plaintiffs in error.

Sullivan, for defendant in error.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The question made here, grows out of the evidence, and it is necessary therefore to state it. The plaintiff below proved that his intestate, Harrison Jones, bought the premises in dispute from Lott Warren, who had previously purchased from one

Kenedy ; that one Bassey went into possession under a contract of purchase, and *held the same under Jones*, for several years, making improvements thereon by erecting a dwelling house and kitchen, and then moved away. The premises then remained unoccupied for four or five years, when Edmond Nunn went into possession, and resided on them several years, and rented them out several years. Edmond Nunn also made improvements on the lot to the value of several hundred dollars. He then sold the premises to one Ronaldson, but this sale was soon thereafter rescinded, the vendor—Edmond Nunn, giving as a reason for rescinding it, that he had taken the advice of counsel, and was informed that he had no title to the lot. Ronaldson went into possession, but moved away when his contract with Edmund Nunn was rescinded, and the defendant, Hawkins Nunn, moved on to the premises immediately thereafter, and was in possession when the suit was brought. It was also in evidence that the house and lot had been sold at Sheriff's sale, but as whose property does not appear ; and that whilst Edmond Nunn was in possession, he had' said that he was willing to abandon the premises, if Jones would charge him no rent. · The plaintiff also read in evidence a deed for the premises from Lott Warren to Harrison Jones, dated in 1836.

The point in the case is this : was the plaintiff entitled to recover upon the possession of his intestate, as proven against the defendant, who entered without color of claim or title as an intruder ? The presiding Judge instructed the Jury that he could not. It is not questioned, but that the plaintiff in ejectment must rely upon the strength of his own title, and not upon the want of title in his adversary. And it is well settled, too, that a plaintiff in ejectment may recover upon a prior possession, against a possession acquired by mere entry. 5 *Geo. R.* 39. In this case it is not pretended that the defendant, Hawkins Nunn, went into possession under claim of title whatever. The point made by the defendant in error, is that Jones, although he went into possession under his deed from Warren, abandoned that possession voluntarily, and having so abandoned it, his representative cannot recover upon the strength of his prior pos-

session.   In reply it is said, that to prevent a recovery upon prior possession, by abandoning it, the abandonment must be without any purpose of resuming it, and if there is the *animus revertendi,* the plaintiff may recover; and farther, that whether there is the *animus revertendi,* is a fact to be left to the Jury.   There can be no question that if the proposition of the counsel for the plaintiff in error, that the abandonment, to defeat a recovery, must be without the *animus revertendi,* be a sound one, that  the fact whether there was or not the *animus revertendi,* must be left for the ascertainment of the Jury.   So the question is narrowed  down to this, "can a plaintiff in ejectment recover upon prior possession against a  tenant  entering as an  intruder,  who has  abandoned that possession with a purpose of resuming it?"   We think that he can, and remand this cause, with instruction that it be left to the Jury to determine  whether in this  case Jones' possession was abandoned with or without a mind of returning.

Direct authority upon this question, I find to be very scarce— it must be  decided  therefore  mainly upon principle.   Possession is one, although the lowest grade of title.   It is *prima facie* evidence of a legal title, until some  act is done  by the rightful owner to divest this  possession, and assert his title.   Hence it is, that as against one who  can show no better title than naked possession, a plaintiff who has  had  prior  possession, may  recover upon  that possession.   Being  prior in time  and equal in degree  with that of the defendant, it prevails against it.   Upon what then, does the idea go, that  this possession, when abandoned, cannot prevail against the possession of another subsequently acquired?   I suppose it must be founded upon the rudimental propositions that before  society was fully organized, property was evidenced by appropriation,  and that  when the  possessor chose  to abandon the possession, it became, as *Blackstone* says, "naturally speaking, *publici juris* again," and liable to be appropriated by the next  occupant.   But even  when  this  primal law of property  prevailed, both the possession and the intention  to possess, must have ceased before the right of  the first occupant was divested ; for if one was possessed of  a jewel, and  lost it, or dropped it by accident, and another  found it,  the  loser was

still the owner. I assume then that to abandon property, the possessor must vacate the possession without any intention of resuming it. If this be so, of course it is true that when one vacates the possession *with* the intention of returning to it, he has not abandoned the property. And it is upon the idea that the first proprietor has abandoned the *property*, that is, made *derelict* both his *title* and possession, that a subsequent possession can prevail against him. (For caution's sake, I remark, parenthetically, that I do not speak of possession in this opinion, on either side, which by lapse of time, has ripened into a statutory title.) *Dereliction*, by the civil law, is the voluntary abandonment of goods by the owner, without the hope or the purpose of returning to the possession—*sine spe revertendi et sine animo revertendi*. 1 *Bro. Civ. Law*, 239. *Woods' Civ. Law*, 156. And the dereliction of the civil law is, upon principle, that which to my mind alone, will in the cases contemplated, defeat a recovery in ejectment upon prior possession. I find, in *Smith vs. Lorillard* the doctrine above stated, taught by *Ch. Kent*, in so many words. He says, "A prior possession short of twenty years, under a claim or assertion of right, will prevail over a subsequent possession of less than twenty years, when no other evidence of title appears on either side. It is, however, to be understood in the cases to which the rule of evidence applies, that the prior possession of the plaintiff had not been voluntarily relinquished without the *animus revertendi*." The Chancellor's opinion therefore was, that although the possession is voluntarily relinquished, yet if there is the *animus revertendi*, the plaintiff may recover. And in the same case, he seems to adopt, in regard to abandonment, the meaning of the civil law, which, as I have shown, is an abandonment without the hope or intention of returning. Speaking of a tenant's possession having so matured as to toll an entry, he says, "but until the possession of the tenant has become so matured, it would seem to follow, that if the plaintiff shows a prior possession, upon which the defendant entered, without its having been formally abandoned, as *derelict*, the presumption arising from the tenant's possession is transferred to the prior possession of the plaintiff, &c." 10 *Johns. R.* 356. So,

in *Clemens vs. Gotshall*, it was held that a man does not lose his settlement by leaving it for a temporary purpose, if he retained the *animus revertendi.* 4 *Yeates R.* 330. *Ibid,* 534. The case read from 5 *Munford's Reports*, by the counsel for defendant in error, is fully to the point, that a plaintiff in ejectment cannot recover upon possession, after he has abandoned it. No question was made in that case, however, about the *animus revertendi,* and I am well satisfied that the criticism made upon it by Mr. Cobb, counsel for plaintiff in error, is correct, and that is, that it rules that when there is an abandonment without the *animus revertendi,* the plaintiff can't recover, but does not deny that he may recover if there is the *animus revertendi.*

That there is some evidence in this case, that Jones had the *animus revertendi,* cannot be questioned. He went into possession as purchaser from Warren, and Bassey went in under him, by virtue of a contract of purchase. What that contract was, does not appear. It may not have been complied with—probably was not, and the contract was abandoned. Whilst Bassey was in, at all events, the witness says he held possession under Jones. When he left, the house and lot was vacant, but up to that time, Jones had not made any abandonment. The vacancy occurred between Bassey's removal and Edmond Nunn's entering. How Edmond Nunn got in, does not appear; but he himself admits that he had no title, and said that he would give up the possession if Jones would not charge him rent. This is some proof that Jones had not quit the possession with a purpose never to return; but on the contrary is, to some extent, demonstrative that he was still asserting a claim, and therefore purposing to regain possession.

So that question must go to the Jury.