NEIL McKAY *et al.*, plaintiffs in error, *vs.* GEORGE KENDRICK *et al.*, defendants in error.

(BY TWO JUDGES.) 1. Where a defendant in ejectment relies on seven years' adverse possession, under color of title, he can claim, under such title, only so much of the land as the largest description in his deed will embrace.

2. If, at the time his grantor makes the deed to him, such grantor, by accident or design, points out more land than the largest description in the deed will embrace, and the defendant takes possession of the whole tract so pointed out, he is in, as to the overplus, only by the *pedis possessio*, and cannot set up prescriptive title as to that part unless he has so held it for twenty years.

3. The lessor of the plaintiff can recover of a mere intruder upon prior possession alone.

4. Where the lessor of the plaintiff is ejected, he cannot be said to have voluntarily abandoned, because he does not resume possession immediately on the land becoming vacant again, especially where the defendant's witnesses testify that no such vacancy ever occurred. 20th February, 1872.

Ejectment. Prescription, etc. Before Judge CLARK. Sumter Superior Court. April Term, 1871.

For the facts see the opinion.

HAWKINS & GUERRY, for plaintiffs in error.

HAWKINS & BURKE, for defendants.

Montgomery, Judge.

This was an action to recover a lot in the city of Americus, containing two and a half acres, known as the Bailey lot. The evidence shows that there is a piece of ground somewhat of the shape of an isosceles triangle, with its base along or near the Southwestern Railroad, and the apex at the bridge across Muckalee creek, at which point Lamar and Hill streets (the two streets which form the two equal sides of the isosceles triangle) meet. The base of the triangle is to the east, and the apex rests on Muckalee bridge on the west. This piece of ground was originally divided into three lots : the Faut lot on the east, the Bailey lot of two and a half acres in the middle, and the wagon-yard lot on the west, in the point of the triangle, and containing one and a half acres.

In 1854, Neil McKay bought the Bailey lot from one Duckworth, and went into possession. In 1856 it was sold as McKay's property under execution, and bought by John W. Fletcher, McKay's brother-in-law, who seems to have bought it in for McKay, as he permitted him to remain in possession. McKay continued in possession, either by himself or his tenants, up to some time in 1858, when he was, through his tenant, Mrs. Mays, evicted by the' defendant, who claimed the lot under a deed from the sheriff, dated in February, 1858, which purported to convey to him "all that parcel of land, being and lying in the city of Americus, known and distinguished as the Wagon Yard lot, lying between the two streets leading to the bridge and Muckalee creek, and running down to a point at said bridge, containing two and a half acres, more or less." This sheriff's sale took place under an execution against the owner of the Wagon Yard lot, and the sheriff, in putting the defendant in possession, through ignorance of the eastern boundery of the Wagon Yard lot, pointed out the eastern boundery of the Bailey lot,.as the eastern line of the lot covered by his deed.

Defendant found Mrs. Mays in possession of the eastern

McKay *et al. vs.* Kendrick *et al.*

portion of the land thus pointed out, and demanded that she should attorn to him, which she refused, saying she was the tenant of McKay.   Whereupon, defendant threatened to evict her, and under this threat she consented to attorn to him.

Plaintiff showed no title back of Duckworth's deed. Defendant relied on adverse possession under color of title. As to whether his possession had been continuous or not there was much conflict of evidence—his witnesses testifying positively that it had been, while plaintiff's witnesses testified equally positively that it had not been.   Defendant's position on this point was, that the adverse possession was either continuous or it was not; if continuous, the statutory bar prevailed, if not, as plaintiff could only recover, if he recovered at all, upon his prior possession, his failure to take possession, upon the temporary abandonment, by defendant, amounted to an abandonment on his part without any *animus revertendi*, and that, therefore, he must fail.

The Court charged the jury, " If McKay was in possession when the sheriff sold to Fletcher, Fletcher can recover on the possession of McKay against an intruder."   " The defendant's possession must be covered by his deed from the sheriff.   If he bought the Wagon Yard lot at sheriff's sale, and this property (the premises in dispute) was in the Wagon Yard lot, and he was in the continued possession for seven years before suit brought, the jury must find for the defendants.   But if the property sued for was outside of the Wagon Yard lot, the deed from the sheriff cannot cover it, and he has no paper title, and for his possession to avail him it must have been for twenty years."

The jury found for the defendants, and plaintiffs moved for a new trial, among other grounds, because the verdict was contrary to the evidence and the charge of the Court.   The Court refused a new trial.   In this we think the Court erred.   The verdict, in our opinion, was contrary to the evidence and the charge, as herein quoted, which was the law

applicable to the case: Code, 3290; 5 Ga. R., 39; 11th, 119; 30th, 652.

The evidence shows that McKay was in possession when the sheriff sold to Fletcher; and the defendant's deed cannot possibly cover more than one acre of the Bailey lot, in any view that can be taken. As to the remaining portion he was clearly an intruder. Hence, we think a new trial should have been granted, and reverse the judgment of the Court below, upon the grounds stated in the head notes.