## NOLAN *vs.* PELHAM.

1. A plaintiff in ejectment may recover the premises in dispute upon his prior possession alone against one who subsequently acquires possession of the land by mere entry and without any lawful right whatever; and the same rule applies where a bill in equity was filed as the equivalent of an action of ejectment, resort to equity

being necessary to prevent loss and injury to the rightful possessor in consequence of the alleged insolvency of the trespasser.

2. A contract between the complainant and certain persons who claimed title to the premises to make complainant a quit-claim deed to the land in question, was pertinent evidence to show that his entry was quiet and peaceable, and was made in good faith. None of the objections were tenable or, at least, not pertinent and applicable to the issue made by the offer and admission in evidence of the writing in question; nor does it affirmatively appear from the record that they were made and passed upon in the court below.

(*a.*) So likewise a letter from the attorney of the persons claiming the title to the complainant was admissible in evidence to show the recognition of complainant's right to the possession. If its admission was doubtful, it did no harm.

(*b.*) A ground of objection to testimony which is not shown to have been made or ruled upon in the court below, will not be considered here.

(*c.*) A deed forming part of the chain of title under which the complainant claimed, was admissible in evidence.

(*d.*) If there was error in permitting the complainant to testify that a chain of titles which he saw in the hands of the attorney for those under whom he claimed was perfect, it was not error which hurt the defendant. But it is doubtful if objection to this testimony was made and insisted on in the court below.

3. Where the existence and loss of a deed, or whether an exhaustive search for it had been made, were left in doubt, there was no error in refusing to admit parol evidence of its contents.

March 5, 1887.

Ejectment. Possession. Title. Equity. Evidence. Practice in Supreme Court. Before Judge BOWER. Worth Superior Court. April Term, 1886.

Reported in the decision.

H. MORGAN; CORBITT, WRIGHT & ARNHEIM, for plaintiff in error.

D. H. POPE, for defendant

HALL, Justice.

Peter Pelham exhibited his bill in equity against A. A. Nolan, stating that he went into possession of lot of land

No. 160, in the 7th district of the county of Worth, in the year 1883, by virtue of a contract of purchase entered into in the month of May, 1883, between himself, of the one part, and Mrs. Frances Whitehouse, of Dutchess county, New York, and Mary J. Howell, of Philadelphia, Pennsylvania, of the other part, they, the said Frances and Mary J., being the widow and daughter of John O. Whitehouse, late of Poughkeepsie, New York, who died testate, leaving the said Frances and Mary J. his only heirs at law and legatees. The bill alleged that said John O. Whitehouse had title to the lot of land in question, and that the complainant entered peaceably into the possession of the premises, under and by virtue of said contract of purchase, made improvements thereon, erected houses, cleared land and boxed all the pine trees growing thereon which were suitable for turpentine purposes; that he remained in undisturbed possession for nearly two years, when his tenant was forcibly ejected from the premises by Nolan; that he was kept out of possession by said Nolan in a like forcible manner; and that Nolan had no claim of right or title to the land, and was insolvent. The bill prayed a decree restoring to him the possession of the premises, and also for a temporary injunction and the appointment of a receiver to take possession of the same, and to gather the turpentine therefrom, to work the premises, etc.

Nolan answered the bill and admitted that he had ejected complainant's tenant from the premises, alleging his right to do so under purchase from one Cummings, who, he insisted, had a regular chain of title derived from Jeremiah Beall, who granted the land. He further set up that Cummings had possession of the land prior to the entry of complainant, by one Hooks, his tenant, who had boxed for turpentine some three hundred trees growing thereon. The court granted a temporary order for the injunction and appointment of a receiver, which continued of force until the trial of the case. Complainant had a verdict for the recovery of possession of the premises, and also mesne

profits. The defendant moved for a new trial, which was denied; and to the judgment refusing this new trial he excepted; and the case is here for review upon.the grounds set out in that motion for new trial.

It was fully proved on the trial that Pelham was in peaceable possession of the land, and had been for nearly two years; that he made thereon the improvements set forth in the bill; and that Nolan and his party forcibly ejected and kept him out of possession of the land. As to these matters there was no controversy. The court admitted in evidence, over the objections of the defendant, the contract between Pelham and the legatees of White- house, after the execution of the same was proved, to show the right under which Pelham entered the premises, and that he took possession in good faith and under the belief that his entry was legal, as well as the letter received by Pelham from Swann, the attorney of the heirs and legatees of Whitehouse, dated on the 12th of April, 1866, in which he says to Pelham that if he would bring and pay to him, $2,000 in cash, he would get the deed from Mrs. White- house and Mrs. Howell to that lot, and others which he had purchased from them, and the other evidences of title in their possession. There was no question that Swann was the attorney of those parties, or that he was authorized to submit the proposition, and it was shown that the letter was written by him. It was offered and admitted, over objection, for the same purpose as was the contract of bar- gain and sale. No grants or deeds conveying the property to Whitehouse were offered on the trial, only because Pelham could not get possession of them to be thus used, except upon the deposit of a sum of money named, to secure their return, with which condition he was unable to comply. He swore that he saw all those papers in the hands of the attorney of Whitehouse's legatees. Objection was also taken to that portion of the evidence.

The defendant, in reply to this evidence, proved by Hooks that he entered on the lot and boxed a small portion

of the trees prior to Pelham's possession, and that he did so as the tenant or vendee of Cummings; but on the other side it was satisfactorily shown that the boxing done by Hooks was on an adjoining but different lot of land. He also made an attempt to trace title from the grantee, Jeremiah Beall, through Cummings to himself, to the lot of land. He testified that he placed the deed, purporting to emanate from Beall, in the hands of his attorney, and that it was lost. It was shown that some search had been made for it and it could not be found. The court, however, was of opinion that the sources of inquiry for this deed had not been exhausted, and for that reason rejected parol evidence of its contents. To this rejection of the parol evidence the defendant excepted. The rejection of this testimony and admission of the contract under which complainant claims possession, and also of the letter from Swann to him, constituted the only grounds in the motion for new trial (which grounds are quite numerous) that we deem it essential to consider in order to determine this case.

1. It is now well settled that the plaintiff in ejectment may recover the premises in dispute upon his prior possession alone, against one who subsequently acquires possession of the land by mere entry and without any lawful right whatever. Code, §3366. This proceeding is the equivalent of the action of ejectment. It was only necessary to resort to it to prevent loss and injury to the rightful possessor, in consequence of the alleged insolvency of the trespasser. That a court of equity could take cognizance of the matter for this purpose was not questioned; and taking it for that purpose, it had authority to decree a complete settlement of all matters in issue between the parties growing out of the transaction. It is apparent that Pelham had possession of the land before the defendant; and that he was ousted by violence and overpowering force, resorted to by the defendant to dispossess him and keep him out of possession, was not dis-

puted. It was incumbent, therefore, upon the defendant to show that either he or the party under whom he claimed had possession prior to Pelham and to those from whom he purchased, or that there was outstanding paramount title; and that he did not acquire possession by mere entry, or that he had a lawful right thereto. We are of opinion that he has failed to establish either of those essential facts; and without more, the finding of the jury was such as it should have been.

2. The contract of Pelham with the persons who claimed title to the premises was pertinent evidence to show that his entry was quiet and peaceable and was made in good faith. The objections to the admission of the testimony were: (1) That the agreement was neither a deed nor bond for titles, but simply an undertaking to make Pelham a quit-claim deed to the land in question, and was no evidence of existing title in the heirs of John O. Whitehouse to the lot of land; (2) that it showed on its face that it had, so far as Pelham was concerned, been forfeited by him, and was no longer obligatory on the heirs of Whitehouse; (3) that the deeds, if they existed, were in the power or control of Pelham, and under his showing he had no right, according to law, to introduce copies of any other evidence of title but them; (4) the contract offered (it being a duplicate executed at the same time the other part of it was) was secondary evidence, and no foundation had been laid for its introduction; (5) that the complainant had shown no diligence in procuring the deeds; it was his own fault that the deeds were not in court, and he could not take advantage of his own wrong to introduce evidence that was not even secondary.

We are of opinion that none of these objections were tenable; at least, they were not pertinent or applicable to the issue made by the offer and admission in evidence of the writing in question; nor does it affirmatively appear from the transcript that they were made in the court below and passed on there. What has been said as to the

admission of this agreement applies, perhaps, to some extent, to the admission in evidence of the letter from Swann to the complainant.  It recognizes the complainant's right to the possession; it showed diligence in endeavoring to procure the deeds, and might be considered by the judge for that purpose, but whether admitted or not, we are satisfied that it did the defendant no injury.  There was no error in admitting the copy deed from Sherwood to John B. Gordon to the lot of land.  The complaint is that a copy was resorted to, and that no foundation was laid for the admission of secondary evidence.  This ground of the motion does not state that that point was made or ruled on by the court below.  Treating it as original but not as secondary evidence, it was properly admitted, because Whitehouse, if he had any title at all, derived it directly from Gordon, as was shown by the agreement between his heirs and Pelham, for the sale and purchase of the land.  There may have been error in permitting Pelham to swear that the chain of title he saw in the hands of Swann, counsel for Whitehouse's legatees, " was perfect;" but this was error that did not hurt the defendant, even if the evidence had been objected to by him.  But from a statement made in the record, it is not at all clear that any such objection was made or insisted on.  It is there stated that " this proof does not lay the foundation of secondary evidence, which was not allowed to be introduced."  If this has any other meaning than that we have attributed to it, we have failed to perceive it.  It was certainly the duty of the party alleging error to make it appear that error had been committed.  It was not necessary to the maintenance of complainant's suit that he should introduce the deeds to the parties with whom he contracted.  Prior possession acquired in good faith, and under an honest belief that he had a right to enter, was all sufficient to maintain his suit against one dispossessing him, and who had no legal title to the premises, or who failed to show a better right to enter thereon.  Pelham's possession was good against such an invader.

3. We do not think that the court erred in rejecting parol evidence of the contents of a deed purporting to be executed by Jeremiah Beall to the person named in the motion, from whom and through whom the defendant professes to derive his title. We are not at all satisfied, from the proofs in this case, that such a deed ever had an existence. It seems that the defendant claimed that he placed the deed in question, with others, in the hands of his counsel, to be used as evidence on the hearing of the preliminary motion in this case, which was to take place at Bainbridge. The counsel to whom this paper was alleged to have been given, upon opening the bundle at Bainbridge, failed to find it, and thought he must have left it at home. Before leaving home, he had opened the bundle and exhibited the title papers it contained to his associate counsel, neither of whom swore positively that they had ever seen such a paper, and neither of whom could state when and where it purported to have been executed, or the names of the witnesses, if any such there were, who attested it. They did swear that the search that each of them had made in his office did not disclose it, but to what extent this search was carried, or whether any search was made of the defendants, was not shown. Because it was uncertain whether the paper existed, or had been lost, or that an exhaustive search had been made for it, the court refused to admit parol evidence of its contents.

It was apparent from the proofs that there were two chains of title purporting to emanate from the same source, and the presumption that one chain or the other was false or forged would not have been far-fetched. Where one chain was, was made apparent by the evidence on the trial. That was in the hands of Swann, the attorney of the parties from whom Pelham derived his right to the possession, and the reason why he refused to give it up on this hearing was also made apparent. There was a much less satisfactory account as to the other chain under which the defendant claimed, given in evidence in the case. The ad-

mission of secondary evidence, under these circumstances, is a matter somewhat in the discretion of the court, and unless that discretion has been flagrantly abused, this court is not called upon to interfere with its exercise.

There is nothing in the other grounds of the motion requiring particular notice, or that could materially affect the result which has been reached in this case. It does not appear to us that there was error in refusing to set aside the verdict and grant a new trial, and therefore we order the

Judgment affirmed.