BAGLEY *et al. v.* KENNEDY.

Possession of land under claim of ownership is *prima facie* evidence of title in the occupant. Hence, where a man died in the year 1829 in possession of the premises now in dispute, persons claiming under his heirs or devisees, and bringing suit in 1887, may recover on proof of his possession and of title derived from him through his heirs or devisees, as the case may be, unless a better adverse title, by possession or otherwise, appears.

July 12, 1890.

Ejectment. Title. Before Judge HUTCHINS. Gwinnett superior court. September term, 1889.

Reported in the decision.

SAMUEL J. WINN, for plaintiffs.
T. M. PEEPLES, for defendant.

BLECKLEY, Chief Justice.

Robert Harkness took possession of the premises in dispute in 1826 or 1827, and died so possessed in May, 1829, leaving a widow and several children his heirs at law. His widow afterwards intermarried with James Hardin. There is some evidence in the record that Harkness died testate, and that his will was admitted to probate. According to this evidence, he devised the premises to his widow for life, with remainder to his "bodily heirs." In April, 1849, all the heirs of Harkness, including his widow who was then Mrs. Hardin, in adjusting some litigation which appears to have arisen amongst them, entered into a written agreement signed and sealed, by which the premises were settled upon Mrs. Hardin for and during her life, with remainder equally to her children by James Hardin. At that

time, so far as appears, there was not, and had not been,
any holding or possession of the premises adversely to
the title of Harkness, his heirs or devisees.    It would
seem that his widow remained in possession after the
death of her husband until her second marriage, and it
is inferable that she or her second husband had posses-
sion at the date of the above-mentioned agreement or
settlement.    She afterwards sold the property to one
McDill, and he took possession in 1851.    No convey-
ance to or from McDill, however, is in the record.    Mrs.
Hardin died in 1884, and this action of ejectment was
brought in 1887 by her children, the offspring of her
marriage with Hardin, against Kennedy, the defendant.
The declaration lays three demises, but the one from the
real plaintiffs, the Hardin children, is alone material.
They relied for recovery upon the title of Robert Hark-
ness, and its transmission to them from his devisees and
heirs at law, by means of the settlement of 1849 which
created their estate in remainder.    To show title in
Robert Harkness, they depend upon his possession
prior to and at the time of his death, and the light
thrown on its nature and character by his devise of the
property, the transmission of his possession to the
widow, and the long period after his death, during
which there was no adverse possession.    The action is
defended upon the general issue, a special plea of
prescription and another special plea setting up equities
in favor of the defendant as a purchaser for value, in
good faith, for improvements made without notice of
the plaintiff's title and under circumstances alleged to
have cast upon them the duty of giving such notice.
The jury found for the defendant upon the general
issue alone, and this renders it unnecessary to deal
with the other pleas.    The motion for a new trial com-
plains that the verdict was contrary to law, contrary
to the evidence, etc.

The defendant's claim of title was derived by purchase, a part of the premises from one Moore, and a part from one Baker, both of whom derived title, by several intermediate conveyances, from one Brooks, whose deed was executed in September, 1851. From Brooks down to the defendant, the chain is complete; but there is no evidence showing any title whatever in Brooks, save that he had possession, and cultivated the land. The defendant's possession commenced in 1871, and continued unbroken up to the commencement of this suit. Some of his predecessors in the title, after Brooks conveyed, also had possession, the earliest date mentioned being 1861. The possession proved at the trial was much more than sufficient to establish a prescriptive title against Mrs. Hardin, or any one else who had a right of action whilst she was in life. But the plaintiffs in this case could not sue until after her death, and consequently the prescriptive term did not commence to run, as against them, until that event happened. So it was ruled in this same case upon a former writ of error. *Bagley* v. *Kennedy*, 81 *Ga.* 721. At the trial out of which that writ of error arose, other conveyances were introduced by the defendant, tracing title back from himself through Brooks to Mrs. Hardin, the tenant for life, who, after the settlement of 1849, conveyed not for life only, but in fee. That these conveyances were not introduced at the subsequent trial, however, makes no difference in the result of the litigation so far as prescription is concerned; for, no matter from whom the defendant's claim of title was derived, whether from Brooks only or the predecessors of Brooks, the plaintiffs would have no right of action so long as their mother, the tenant for life, was living. They could be in no *laches* in not bringing suit, until they had some right to sue.

The sole question now for our determination is

whether, treating the defendant as a stranger to the Harkness title, the plaintiffs could recover against him on that title as transmitted to them by the settlement of 1849, the title of Harkness being evidenced by possession alone. "A plaintiff in ejectment may recover the premises in dispute upon his prior possession alone, against one who subsequently acquires possession of the land by mere entry, and without any lawful right whatever." This expression of the law is in accordance with the general authorities on the question. Possession affords a presumption of title. Wood's Pr. Ev. 666; Best on Presumptions, 87; Tyler on Ejectm. 71, 72; Adams on Ejectm. 77, and notes; 1 Saund. Pl. & Ev. 1004; 1 Chitty's Gen. Pr. 274, 275; Barger v. Hobbs, 67 Ill. 592; Wilson v. Palmer, 18 Tex. 592; Tapscott v. Cobbs, 11 Gratt. 172; Hutchinson v. Perley, 4 Cal. 33; Bequette v. Caulfield, Id. 278; Plume v. Seward, Id. 94; McMinn v. Mayes, Id. 209; Hicks v. Davis, Id. 67; Bird v. Lisbros, 9 Cal. 1; Nagle v. Macy, Id. 426; Jackson v. Hazen, 2 Johns. 22; Jackson v. Denn, 5 Cow. 200; Johnson v. Morris, 7 N. J. Law, 7, 29; Smith v. Lorillard, 10 Johns. 346; Allen v. Rivington, 2 Saund. 111, and note (a); Doe v. Cooke, 7 Bingh. 346. In *Brown* v. *Colson*, 41 *Ga.* 42, plaintiff's ancestor died in possession, and the premises were assigned to the widow as dower; she went into possession and died. These facts were held sufficient, *prima facie*, to put the defendant upon proof of title. So an administrator may recover upon the possession alone of his intestate. *Buckner* v. *Chambliss*, 30 *Ga.* 652. Heirs may recover upon the possession of their ancestor. *Boynton* v. *Brown*, 67 *Ga.* 396. Title derived through an executor may be rooted in the testator's mere possession. *Hadley* v. *Bean*, 53 *Ga.* 685. And see, on the general question, *Wood* v. *Haines*, 72 *Ga.* 189; *Jones* v. *Nunn*, 12 *Ga.* 469; *Eaton* v. *Freeman*, 63 *Ga.* 535; *Clark* v.

*Hulsey*, 54 *Ga.* 610; *Johnson* v. *Jones*, 68 *Ga.* 825; *McKay* v. *Kendrick*, 44 *Ga.* 607; *Nolan* v. *Pelham*, 77 *Ga.* 262; *Jones* v. *Easley*, 53 *Ga.* 454; *Jones* v. *Scoggins*, 11 *Ga.* 119.

Inasmuch as the possession of Harkness continued till his death, no intention can be imputed to him to renounce or abandon it.  If the evidence be treated as sufficient to establish his testacy, it shows that he devised the land, and thus the title would pass to the plaintiffs through his will, and the settlement made in 1849 by the devisees.  If he died intestate, then the title descended to these same persons as heirs at law, and they were equally competent to pass it by the settlement into the plaintiffs.  So in either event, the plaintiffs acquired such title as was in Robert Harkness, save that a life estate was carved out of the same for their mother.  It is manifest, therefore, that their title in remainder is one upon which they can recover, as against a subsequent possession to that of Harkness, originating by mere entry and without legal right.  Under the evidence in the record it does not appear that Brooks could have entered rightfully as against the Harkness title.  And if he could not do so, he could confer no right so to do upon others.  A title derived from him, except as aided by prescription, would be no better at the end of the chain than at the beginning; and Kennedy, not being in a position to avail himself of prescription as against the plaintiffs, is relatively to them a wrong-doer.  Having no title which affects theirs, he has usurped their estate and right of possession, and is no better off than if his entry had not taken place until after the death of their mother, and had then been accomplished by an open trespass.

It results from the foregoing exposition of the law applicable to the case that the verdict was wrong, and that the court erred in not granting a new trial.

*Judgment reversed.*