25310. COOK *v.* SOUTHERN RAILWAY COMPANY *et al.*

DECIDED JULY 10, 1936. REHEARING DENIED JULY 22, 1936.

*Duncan Graham,* for plaintiff. *W. S. Mann,* for defendant.

GUERRY, J. The plaintiff, a boy of eight years, by next friend, brought suit for damages against two railway companies, alleging that he was injured because of their negligence in having and maintaining along the right of way but not at a public crossing, one foot from end of cross-ties of one of the defendants, a signal system whereby two iron pipes used as shifting-rods ran from the tower at a crossing of the two railroads to a signal apparatus for control and operation of trains at a public street crossing in Helena, Georgia, on the tracks of one of said railroads, about sixty yards west from the railroad crossing; which pipes were eighteen inches from the ground and were supported every twelve feet by

metal supports resting on concrete bases, and were uncovered and exposed for a distance of fifty feet, the same being covered except for said space. Whenever these pipes are used to change position of signals they move a distance of six inches horizontally either backward or forward. The petition was in two counts, and charged that the defendants were negligent in maintaining this system with the pipes so uncovered, and in not warning the plaintiff of the danger therein, in that the same constituted a hidden danger as to the plaintiff and others crossing over the same, that said fifty-foot space where the same was so uncovered was used by the public and had been for many years in the past, which use was with the implied permission of the defendants, in going to and from the residential portion of the city on one side of the railroad-tracks to the business portion thereof on the other side, and in going to and from a store on the property of one of the railroads, a public street lying between the store and the right of way of this defendant, whereon was located said signal system, which consisted of pipes from the tower to the apparatus, being worked by a man in the tower by means of a lever, which moved the pipes and consequently moved the signal arms. The plaintiff alleged that he was going to the store to make a purchase, that many people daily used this fifty-foot space as a passageway in crossing, and that it was more convenient to the public, being a nearer and more direct route either to the store or to and from the business section to the residential section of the city. In the first count it was charged that the defendants' agent moved said pipes, apparently in properly operating said signal system, at the time the plaintiff stepped on the same in using this fifty-foot space to go to the store, and he was tripped and thrown against some sharp steel appliance, a part of the system, and injured. In the second count the plaintiff charged that it had rained, and said pipes were slippery, and when he stepped on the uncovered pipes he slipped and fell against said sharp instrument. It was alleged that, particularly as to a child of the plaintiff's age, said uncovered pipes constituted a hidden menace or peril not apparent to one of his age. The petition as a whole was dismissed on general demurrer, and the plaintiff excepted.

1. The elements of legal liability of the owner of premises for injuries occasioned to persons thereon vary according to whether

the person injured was, at the time of the injury, a trespasser, a licensee, an invitee express or implied, or a person standing in some special relation recognized by law. *Mandeville Mills* v. *Dale, 2 Ga. App.* 607 (58 S. E. 1060). Therefore, as a general rule, the owner of land is under no duty or obligation to keep the same in a safe condition for the benefit of trespassers, intruders, idlers, bare licensees, or others who come upon it, not by any invitation express or implied, but for their own pleasure, or to gratify their curiosity, however innocent or laudable their purposes may be. As to a licensee, such owner owes no duty as to the condition of the premises, unless imposed by statute, save that he should not knowingly let him run into a hidden peril or wilfully cause him harm. The licensee enters on the land at his own risk, and enjoys the license subject to concomitant perils. *Jones* v. *Asa G. Candler Inc., 22 Ga. App.* 717 (97 S. E. 112); *Kinnebrew* v. *Ocean Steamship Co., 47 Ga. App.* 704 (171 S. E. 385).

2. While an invitation may be implied by a dedication or may arise from known customary use of a portion of certain premises, and it may be inferred from conduct, if notorious or actually known to the owner or his authorized agent, or from any state of facts upon which it naturally and necessarily arises, still, in order to constitute one an invitee, there must be some mutual interest or benefit in the matter, and an invitation of the owner is implied by law where the person goes on the premises for the benefit, real or supposed, of the owner or occupant, or in a matter of mutual interest, or in the usual course of business, or for the performance of some duty. *Crossgrove* v. *A. C. L. R. Co., 30 Ga. App.* 462 (118 S. E. 694).

(*a*) A licensee is a person who is neither a customer, nor a servant, nor a trespasser, and who does not stand in any contractual relation with the owner of the premises, and who is permitted, expressly or impliedly, to go thereon merely for his own interest, convenience, or gratification. The general test as to whether a person is an invitee or a licensee is whether the injured person at the time of the injury had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of some relation which inures to the

benefit of the two, or to that of the owner, no invitation may be implied, and the injured person must be regarded as a licensee. *Petree* v. *Davison-Paxon-Stokes Co.,* 30 *Ga. App.* 490, 492 (118 S. E. 697); *Hyde* v. *A. & W. P. R. Co.,* 47 *Ga. App.* 139 (169 S. E. 854).

(*b*) The plaintiff in this case was at best a licensee. It does not appear that he had any business or contractual relation with the railroad owner of the premises where he received his injury. The fact that he was to trade at a store on other premises of the same railroad would not serve to render him an invitee of the railroad on this particular portion thereof, when his admitted use thereof was for his own convenience as the most direct and nearest route to the store. His use of this passageway was alleged to have been customary and habitual, but was not shown to be for the mutual interest and benefit of himself and the defendants or of them alone.

3. But because the plaintiff was a licensee does not mean, under the facts of this case, that he was entitled to no more protection or diligence on the part of the defendants than a mere trespasser. In the case of a trespasser, liability arises only where the injury has been occasioned by the wilful and wanton negligence of the owner. No duty of anticipating his presence is imposed, even as to an infant trespasser, as was pointed out in *Charleston & W. C. Ry. Co.* v. *Johnson,* 1 *Ga. App.* 441 (57 S. E. 1064); and the duty to use ordinary care to avoid injuring him after his presence and danger are actually known is, in point of fact, merely the duty not to injure him wantonly and wilfully. However, in the case of a licensee there is a slightly higher duty on the part of the owner of the premises. He must not wantonly or wilfully injure the licensee; and since the presence of the licensee as a result of his license is at all times probable, some care must be used to prevent injuring him after his presence is known or reasonably should be anticipated. The fundamental concept of this class of cases, as in that of trespassers, is of a liability only for wilful and wanton injury, but it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's premises. In *Mandeville Mills* v. *Dale,* supra, it was said, as to a licensee,

that "ordinary care and diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated." But as to the licensee, the same as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, hidden perils, and things of that character. After the presence of the licensee is known, exactly the same acts of caution may be required of the owner to satisfy the legal duty as would be necessary if the licensee were invited. *Mandeville Mills* v. *Dale,* supra; *Rollestone* v. *Cassirer, 3 Ga. App.* 161 (59 S. E. 442); *Jones* v. *Candler,* and *Petree* v. *Davison-Paxon-Stokes Co.,* supra.

(*a*) As to an infant, as in this case, the owner of premises on which a dangerous thing exists may in legal duty be bound to use a greater quantum of precaution in behalf of such infant licensee than he would in behalf of an adult invited guest. The sum of the whole matter is included in the expression that "duties arise out of circumstances." See *Southern Ry. Co.* v. *Chatman, 124 Ga.* 1026 (53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675); *Rollestone* v. *Cassirer,* supra. While as a general rule it has been said that a property owner is under no higher duty to an infant licensee than is imposed on him with respect to an adult licensee, the circumstances of the particular case may be such as to impose on him a higher duty with respect to an infant licensee who is of such tender age that he is unable to appreciate and avoid danger. *Etheredge* v. *Central Ry. Co., 122 Ga.* 853 (50 S. E. 1003). The petition charged that the plaintiff was an immature boy about eight years old, and that the danger in stepping on the exposed pipes, that they might be moved suddenly, or that they were slippery from wetness, was not apparent.

(*b*) Consent of an owner of land for the public to use a portion thereof as a passageway may be inferred from the fact that such portion has been for sometime in the past, and is now, continuously used by the public for this purpose without objection on the part of the landowner, and from such implied consent a duty arises to protect persons using the passageway against hidden perils which may be encountered during such use. However, in such an instance, in order to recover, it must appear that the plaintiff was injured as a result of some hidden danger negligently al-

lowed to exist in the passageway so used with the implied consent of the owner. It is not alleged that the method of constructing this signal device was unusual or improper. That which is done as it should be done is ordinarily not negligence. An allegation that by reason of rain or mist a person, who was a licensee walking on a railroad iron rail, slipped and was injured, does not give rise to a cause of action, or constitute such railroad rail, properly laid, a mantrap or pitfall. Especially is this true where there was no occasion for the injured person to be walking thereon.

Neither do we think that the fact that these iron pipes, which were parallel to the rails and placed on stands twelve feet apart and eighteen inches high, constituted a mantrap or pitfall. The defendant company in this case neither expressly nor impliedly invited the injured boy upon its premises, and is not liable for the unsafe condition of its property unless it constitutes a mantrap or pitfall. Nor was the boy allured or attracted by any inducement offered, as is the principle in the "turntable cases." The point at which the injury occurred was "thirty feet from the highway crossing and twelve feet from the public street" which parallels the railroad. These pipes, which were eighteen inches high and wet and slippery because of rain, did not constitute a "hidden and secret peril." The signaling device used was a necessary part of the equipment of the railroad. It was at a point on the defendant's property where the public were not invited. At the regular public crossings it was covered or underground. The negligence alleged is in effect that the defendant failed to cover it altogether along its entire distance. The defendant being liable only for wilful and wanton injury, we may consider that "wilfulness and wantonness import premeditation or knowledge and consciousness that injury will result from the act done." 20 R. C. L. 20. To dig a ditch across a path known to be constantly used by licensees or even trespassers, without giving any warning of its existence to those who might cross, may constitute such ditch a mantrap or pitfall. *Etheredge* v. *Central of Ga. Ry. Co.,* 122 *Ga.* 853 (50 S. E. 1003). If the ditch were already there, and such a path were started after the ditch was dug, it certainly would not constitute a mantrap or pitfall. The signal device constructed as alleged was not a known dangerous instrumentality such as that ordinary care would require the construction of safeguards. The

pipes were built eighteen inches above the ground. They were intended to shift backward and forward over a space of six inches. A licensee, though a minor, using this fifty-foot space for his own benefit, has no claim against the defendant because he steps on such pipes and they are moved, thus causing him to be injured, when the petition shows the defendant had no actual knowledge of his presence. Even under the principle in *Petree* v. *Davison-Paxon-Stokes Co.,* supra, and now codified (Code of 1933, § 105-402), we do not think the instrumentality which caused the alleged injury was so inherently dangerous as to place on the defendant the duty of anticipating the presence of the plaintiff and that he would be injured thereby if not warned. The court did not err in sustaining the demurrer.

*Judgment affirmed. Broyles, C. J., concurs. MacIntyre, J., dissents.*

MACINTYRE, J., dissenting. No statutory duty appearing, the defendant (the owner) owed the plaintiff (a licensee) no duty as to the condition of the premises, save that he should not knowingly let him run upon a hidden peril or wilfully and wantonly cause him harm. *Smith* v. *Jewell Cotton-Mill Co.,* 29 *Ga. App.* 461 (116 S. E. 17) ; *Petree* v. *Davison-Paxon-Stokes Co.,* supra. The location of the shifting-rods which were in no way concealed from view, so long as they were stationary, did not amount to the setting of a mantrap or pitfall or other contrivance so dangerous in character as to imply a disregard of safety or willingness to inflict injury. *Wilder* v. *Gardner,* 39 *Ga. App.* 608 (147 S. E. 911) ; *Todd* v. *Armour,* 44 *Ga.* 609 (162 S. E. 394). Therefore I think that count 2 of the petition was properly stricken on general demurrer. As to count 1, I think the allegations show that the plaintiff was a licensee, and therefore, since his presence as a result of his license was at all times probable, some care should have been taken to anticipate his presence, and ordinary care and diligence should have been used to prevent injuring him after his presence reasonably should have been anticipated. *Mandeville Mills* v. *Dale,* and *Petree* v. *Davison-Paxon-Stokes,* supra.

"A licensee is a person who is neither a customer, nor a servant, nor a trespasser, and does not stand in any contractual relation with the owner of the premises and who is permitted expressly or impliedly to go thereon merely for his own interest, convenience,

or gratification. The owner of such premises is liable to a licensee only for wilful or wanton injury." Code, § 105-402. This section made its first appearance in the Code of 1933, and was codified from *Petree* v. *Davison-Paxon-Stokes Co.,* supra. But in that case this court quoted approvingly from *Mandeville Mills* v. *Dale,* supra, as follows: "There is [owed to the licensee] a slightly higher duty on the part of the owner or proprietor of the premises· [than is owed to a trespasser]. He must not wantonly and wilfully injure the licensee; and since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and ordinary care and diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated. The fundamental concept in this class of cases [licensee], as in that of trespassers, is of a liability only for wilful and wanton injury; but it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done." "A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner, or one in possession, to provide against the danger of accident." But where a petition in effect alleges that the owner put over a path, or over a space fifty feet wide (as large as a street), which space is in a town between the depot and a store building, part of which is occupied by the express office and is generally and almost constantly used by the public, two iron rods which are apparently stationary, and a child about eight years old walks over the space, which is generally and almost constantly used by the public, steps upon what apparently are, and what he thinks are, two harmless stationary rods, and as he does so, the owner, through a mechanical device or contrivance, jerks or shifts those rods about six inches, which movement throws the child down and breaks his leg, I think it is for a jury to say whether or not the defendants were operating a mantrap or at least a contrivance so dangerous as to imply a disregard or willingness to inflict injury. In other words, the allegations in this count of the petition show a moving of the shifting-rods under such circumstances as to make it a jury question whether or not the defendant exercised proper care to anticipate the presence of the child of eight years, and whether (if this

question should be answered adversely to the defendant), the defendant exercised ordinary care and diligence to prevent injuring the child. *Rollestone* v. *Cassirer,* supra.