28999. PRIES *v.* ATLANTA ENTERPRISES INC.

Decided December 5, 1941. Rehearing denied December 17, 1941.

*Clarence H. Calhoun, Clarence H. Calhoun Jr., J. Herbert Johnson,* for plaintiff.

*Sidney Smith, Sidney Smith Jr.,* for defendant.

PER CURIAM. The evidence shows conclusively that the only purpose of the visit of the plaintiff upon the premises of the defendant was to obtain from his son there working an indorsement of a promissory note which he wished to use at a bank. The defendant was in no wise interested in his visit, and the plaintiff was at most only a licensee. "A licensee is a person who is neither a customer, nor a servant, nor a trespasser, and does not stand in any contractual relation with the owner of the premises, and who is permitted expressly or impliedly to go thereon merely for his own interest, convenience or gratification." Code, § 105-402; *Petree* v. *Davison-Paxon-Stokes Co.,* 30 *Ga. App.* 490, 492 (118 S. E. 697). "The general test as to whether a person is an invitee or

a licensee is whether the injured person at the time of the injury had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of some relation which inures to the benefit of the two, or to that of the owner, no invitation may be implied, and the injured person must be regarded as a licensee." (Citing.) *Cook* v. *Southern Railway Co.,* 53 *Ga. App.* 723, 725 (187 S. E. 274; *Cobb* v. *First National Bank,* 58 *Ga. App.* 160, 163 (198 S. E. 111). "An owner owes to a licensee no duty as to the condition of the premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or wilfully cause him harm." *Smith* v. *Jewell Cotton-Mill Co.,* 29 *Ga. App.* 461 (116 S. E. 17), and cit. A licensee must take the premises as he finds them. *Jones* v. *Asa G. Candler Inc.,* 22 *Ga. App.* 717, 720 (97 S. E. 112); *Rawlins* v. *Pickren,* 45 *Ga. App.* 261 (164 S. E. 223).

The plaintiff testified: "When I got up close to the place where my son works I went and I saw a door right in front of my eyes. I pushed the door and I put my foot out and I went down about ten or twelve feet, right there on top of an electric generator. . . When I opened the door there was no light burning inside of the door. It was pitch dark. There was no platform in there. There was no railing. The minute I pushed the door open I put my foot out and I went down. . . I was perfectly familiar with the premises. . . I was going up to the top of the building to the projecting room. I had been there before. I was there twice in eight years. I had been there before and I knew where it was, all right. . . It was dark when I made that movement from the door to the bottom of the steps. I could see all right. I could see where I was going. . . When I walked up to the fourth floor I walked over to the door. As to what door it was . . to the door which is the right door, the one that—the door that brings me to my son's booth. I went up there for the purpose of getting a note signed that I had due in the bank that day. . . That was my business in the theatre. . . I walked over to this door and turned the knob and opened the door. It was dark in there. As to whether I could see it was dark . . it was dark; yes, sir. . . As to why I went in the door when it was dark

and I could not see where I was going . . well, I thought this the door what bring me to my son's projecting room. There was nothing the matter with my eyesight at that time. . . I could see all right when I went in there. . . The door was shut. I had to open it to go in there."

The plaintiff opened a door which he immediately found opened into darkness. The danger was therefore plainly obvious to him, and the situation did not constitute as to him any hidden peril. A warning by the defendant would not have apprised him of anything he did not know, and not laboring under any disability, he could reasonably appreciate the danger of proceeding into darkness. The defendant was not under any duty, with respect to such licensee, to keep the premises up to any particular standard of safety. Under the law he took the premises as he found them. No dangerous act was being done by the defendant. The defendant did not knowingly let him run into a "hidden peril" or wilfully or wantonly cause his injury. The evidence does not show any liability against the defendant under the law, but shows that the plaintiff's injury was proximately caused by his failure to use ordinary care for his own safety. Accordingly, the trial court did not err in granting a nonsuit.

*Mandeville Mills* v. *Dale,* 2 *Ga. App.* 607 (58 S. E. 1060), *Rollestone* v. *Cassirer,* 3 *Ga. App.* 161 (59 S. E. 442), and other decisons cited by the plaintiff do not, under the facts of this case, require any ruling different from that here made. The case is controlled by the principles enunciated in the authorities hereinbefore cited.

*Judgment affirmed. Sutton and Felton, JJ., concur.*

STEPHENS, P. J., dissenting. This case is in this court on exception by the plaintiff to a nonsuit. The plaintiff did not claim that at the time he received the injuries which he alleges caused the damages he was on the premises of the defendant as a customer or patron, or for any matter connected with the defendant's business or for the defendant's benefit. The plaintiff claimed however, and introduced evidence in support thereof, that he went upon the premises of the defendant for the purpose of contacting his son, who worked there for the defendant, and to obtain the indorsement of his son on a note which he was executing for the purpose of obtaining a loan for himself, and that he was given

express permission by the defendant's agent in charge of these premises to enter thereon for this purpose. The plaintiff therefore, at the time he was injured, was not a trespasser on the premises but was a licensee with express permission to enter the defendant's theatre building. The evidence supports this.

The liability of the owner or proprietor of premises, for injuries received by persons while present upon such premises, may be divided into four classes or distinctions: (1) Where the injured person is upon the premises by invitation, express or implied of the owner or proprietor. Code, § 105-401. (2) Where he is upon the premises as a licensee. Code § 105-402. (3) Where he is there under some other special relation. (4) Where the person injured is upon the premises as a trespasser. See *Mandeville Mills* v. *Dale, 2 Ga. App.* 607, 609 (supra). It will be seen that classes or distinctions denominated 1, 3, and 4 do not apply here, but that the plaintiff at the time he was injured was upon the premises of the defendant for his own interest, with the express consent and permission of the defendant, and comes within class or distinction 2. "A licensee is a person who is neither a customer, nor a servant, nor a trespasser, and does not stand in any contractual relation with the owner of the premises, and who is *permitted expressly or impliedly* to go thereon merely for his own interest, convenience, or gratification." *Petree* v. *Davison-Paxon-Stokes Co., 30 Ga. App.* 490, 492 (supra); Code, § 105-402; *Crossgrove* v. *Atlantic Coast Line R. Co., 30 Ga. App.* 462 (118 S. E. 694). In the case of a licensee there is a higher duty on the part of the owner or proprietor of premises than in the case of a trespasser. In *Mandeville Mills* v. *Dale,* supra, approved and followed by this court on many occasions, it is stated that the owner or occupier of premises "must not wantonly and wilfully injure the licensee; and since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and *ordinary care and diligence must be used to prevent injuring him after his presence is known;*" and that "the fundamental concept in this class of cases, as in that of trespassers, is of a liability only for wilful or wanton injury; but it is usually *wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be . . within the range of a dangerous act being done."* (Italics ours.)

If it is the duty of the owner or proprietor of premises to use ordinary care to prevent injuring the licensee after his presence is known, certainly then by parity of reasoning it is the duty of such owner or proprietor to use ordinary care to avoid injuring the licensee when the owner or proprietor of land gives to another express permission to go upon the premises, not for the common interest or mutual advantage of both parties but for the mere benefit of the one to whom the privilege is extended. As was stated in *Rollestone* v. *Cassirer*, supra where it was held that "After the presence of the licensee is known, exactly the same acts of caution may be required of the proprietor, to satisfy the legal duty, as would be necessary if the licensee were invited, . . 'duties arise out of circumstances.' ". Therefore, while it is stated that the duty of the owner or proprietor of premises owing to a licensee is merely the duty not to injure him wantonly or wilfully, the courts proceed on the theory that such licensee is wantonly or wilfully injured where the owner or proprietor of the premises, after the presence of the licensee on the premises is known or reasonably should be anticipated, fails to exercise ordinary care and diligence to prevent injuring the licensee. Therefore, where one is not upon premises as a trespasser, but is there in his own interest, with the express permission of the owner or proprietor, and his presence on the premises is known to the owner or proprietor, it is the duty of the owner or proprietor to use the same acts of caution to prevent injury to the licensee as are sufficient to satisfy the legal duty which would be necessary if the licensee were invited. If this be true, where the owner or occupier of premises gives to the licensee express permission to enter the premises the condition of such premises must be such as to satisfy the requirements of ordinary care and diligence in so far as such licensee is concerned. Therefore, as to a licensee who is upon premises with the express permission and consent of the owner it is the duty of the owner to exercise ordinary care in keeping the premises safe. See *Mandeville Mills* v. *Dale*, and *Petree* v. *Davison-Paxon-Stokes Co.*, supra; *Atlantic Steel Co.* v. *Cleaton*, 52 *Ga. App.* 502, 506 (183 S. E. 827). This is the principle controlling the decisions in *Augusta Railway Co.* v. *Andrews*, 92 *Ga.* 706 (19 S. E. 713), and *Augusta Railway Co.* v. *Andrews*, 89 *Ga.* 653 (16 S. E. 203). In the first of these cases the plaintiff, an employee of a telephone

company, alleged that he was injured by the improper wires of an electric line maintained by the City of Augusta, when he climbed a telephone pole to fix the telephone lines. The Supreme Court reversed the overruling of a general demurrer to the petition on the ground that the plaintiff was a trespasser because it did not appear that he was upon the telephone poles of the city with its permission. The plaintiff amended his petition and alleged that he climbed the poles of the city to fix the telephone line with the express permission of the city, and came in contact with the electric wires on the pole, and because of the negligent manner in which these wires were constructed and maintained he was injured. The Supreme Court affirmed the allowance by the trial court of such amendment. These cases were referred to in *Mandeville Mills* v. *Dale,* supra, as authority for the proposition that a duty higher than is due a trespasser, is owing to a licensee by the owner or proprietor of premises.

Also it is the rule that as "to the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, mantraps and things of that character." *Mandeville Mills* v. *Dale,* supra. A jury may infer wantonness from evidence of negligence. *Humphries* v. *Southern Ry. Co.,* 51 *Ga. App.* 585, 589 (181 S. E. 135). It is inferable from the evidence that the defendant was negligent in the maintenance of the door and the space beyond in the condition they were in as described in the evidence, and that the plaintiff did not know of such condition until too late to protect himself. The evidence was sufficient to authorize a jury to find for the plaintiff, and the court erred in granting a nonsuit.