A98A1088. LOWERY'S TAVERN, INC. v. DUDUKOVICH.
A98A1089. NORTHEAST SALES DISTRIBUTING, INC.
v. DUDUKOVICH.
A98A1090. SCOTT v. DUDUKOVICH.
(507 SE2d 851)

JOHNSON, Presiding Judge.

Lowery's Tavern, Inc., Northeast Sales Distributing, Inc., and Howard Scott were granted interlocutory review of the trial court's order denying their motions for summary judgment in this premises liability case. For reasons which follow, we reverse.

This accident occurred on October 8, 1994, just after midnight, when James Dudukovich entered an alley and fell into an elevator shaft. The events leading up to his fall form the basis of the arguments which we consider in this appeal. The facts taken most favorably to Dudukovich show as follows: Dudukovich traveled to Athens to meet with a group of friends, including Jane Larimer, and attend a band performance. Dudukovich consumed approximately 11 beers before this incident occurred. Larimer consumed approximately eight or nine beers before this incident occurred. Although both claimed to have been sober when the accident occurred and there is testimony that Dudukovich seemed to be in complete control of his faculties when he left the club immediately prior to his fall, Dudukovich had a blood alcohol level of .188 — twice the legal limit for driving a vehicle — when his blood was tested shortly after the fall.

Just after midnight, Dudukovich and Larimer left one club and proceeded to another club to meet their friends. Dudukovich recalls nothing more of that evening and cannot testify as to any actions he may have taken in the alley or how he entered the elevator shaft. Dudukovich acknowledged that there was a safe, well-lit, public sidewalk that he and Larimer could have traveled to get to the other club. He further acknowledged that the public sidewalk was the shortest, most direct route to the other club. However, instead of taking the public sidewalk, Dudukovich suggested diverting into the alley, an unlit route. Dudukovich admitted on deposition that he had never before been in the alley.

The alley is in the shape of a "T," with the stem of the "T" being about 100 feet long and the left half of the "T" being about 73 feet long. While the two were walking in the alley, Larimer asked Dudukovich on several occasions if he was sure they were going the right way and expressed doubts about the shortcut. There were garbage cans in the alley, and Larimer described the alley as "very dark," "muddy," "gross" and "yucky." The alley was covered with five-foot-tall weeds and contained debris, twelve to twenty trash cans, empty boxes, mops, mop buckets and recycling bins. According to B. J. Kilfara, a witness, the alley was "dark and grim" and "it didn't

look like anyone belonged there."

Larimer testified that the alley was not a major thoroughfare and did not look very well traveled. She stated that "there wasn't enough light to really see." There were planks or boards to walk around, and the two had to walk single file. Dudukovich insisted he knew where he was going and instructed Larimer to turn left at the top of the T-shaped alley.

Upon reaching a large fence after she had turned left, Larimer turned around and noticed Dudukovich was no longer behind her. She retraced her steps and saw a dark hole in the side of a building. Thinking Dudukovich had entered the building through this opening, Larimer stepped into the opening and fell into the elevator shaft, landing partially on Dudukovich. Larimer testified that although she could have done so, she made no attempt to ascertain whether the black opening in the side of the building was safe.

The elevator shaft was located on property owned by Scott and leased by Lowery's Tavern, a bar. At no time did Dudukovich or Larimer intend to go to Lowery's Tavern. The elevator opens into Chad Lowery's office. There is no public entrance to or exit from Lowery's Tavern or any other buildings through the alley. The alley is used for storage of garbage, deliveries by vendors, and as a fire escape.

Other than Chad Lowery and tavern employees, only delivery people have used the elevator since Lowery's Tavern has occupied the premises. The delivery people were trained to lock the elevator doors when they were finished using the elevator. However, Chad Lowery admitted that on occasion the delivery people failed to follow his instructions and left the elevator doors unlocked.

At the time of this incident, the elevator was stopped at the top of the shaft, opening into Chad Lowery's office. The elevator was most recently operated by employees of Northeast Sales, who made a delivery to Lowery's Tavern. One of the employees testified that they finished their delivery and pushed the elevator doors closed. While the employees had no recollection of locking the elevator doors on this occasion, one of them testified that this was his usual procedure. At approximately 2:00 a.m., while Lowery's Tavern was in the process of closing, Chad Lowery learned that someone had fallen into the elevator shaft.

1. At the outset, it is important to note Dudukovich's status vis-a-vis the defendants. Dudukovich concedes he was not an invitee on the premises. Therefore, the defendants were charged only with the duty not to wilfully or wantonly injure him.[1] OCGA § 51-3-2 (b).

---

[1] Both Lowery's Tavern and Scott, as possessors of the premises, are subject to premises liability responsibilities under OCGA § 51-3-1. Northeast Sales, who is being sued because of its alleged control over what can be characterized as a static condition on the premises, is

Whether Dudukovich was a licensee or a trespasser is irrelevant because the duty owed him is the same in either case. See *Hawkins v. Brown*, 228 Ga. App. 311, 312 (2) (491 SE2d 423) (1997); *Crosby v. Savannah Elec. &c. Co.*, 114 Ga. App. 193, 196 (1) (150 SE2d 563) (1966). A possessor of land is subject to liability for physical harm caused by a condition on the land to those licensees known or expected to come upon the land only if: "(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved." (Citations and punctuation omitted.) *Cooper v. Corporate Property Investors*, 220 Ga. App. 889, 891 (470 SE2d 689) (1996).

2. Dudukovich argues that the doors to the elevator shaft were left open, thereby creating a mantrap. However, the undisputed evidence in the record established that the doors to the elevator were closed when Dudukovich approached them. While the elevator doors were apparently left unlocked by employees of Northeast Sales, there is no testimony contradicting Northeast Sales employees' testimony that the elevator doors were closed.

Dudukovich asserts it may be inferred that because the doors do not have handles on the outside, he could not have opened the doors from the outside and Northeast Sales employees must not have closed the doors. However, this inference does not withstand the direct evidence from Northeast Sales employees that the doors were left closed. *Kappa Sigma Intl. Fraternity v. Tootle*, 221 Ga. App. 890 (473 SE2d 213) (1996). "Where direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff." (Citations and punctuation omitted.) Id. at 892. The fact that the doors do not have handles on the outside does not lead to the conclusion that it is impossible to open them from the outside.

Moreover, Dudukovich cannot recall any actions he may have taken in the alley or how he entered the elevator shaft, and there is no direct evidence that the doors were open. Contrary to Dudukovich's contention, there also is no testimony that a Lowery's Tavern

subject to premises liability responsibilities also. See *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391 (394 SE2d 345) (1990).

employee, another delivery person, or any other individual opened the doors to the elevator shaft after the Northeast Sales employees closed the doors.

3. We agree with the trial court that the assumption of the risk doctrine does not bar Dudukovich's claim. The evidence adduced does not establish that Dudukovich had the requisite subjective and actual knowledge of the danger posed by the elevator shaft such that it can be argued he assumed the risk of being injured by it. See *Vaughn v. Pleasent*, 266 Ga. 862 (471 SE2d 866) (1996). Nevertheless, in this case the risks associated with departing from a safe and direct route to his destination, proceeding through a dark, debris-filled alley, opening doors that gave access to the elevator shaft, and stepping into a dark hole in the side of a building were so patent, and Dudukovich's conduct so unreasonable, that Dudukovich should be charged with the consequences of his failure to use ordinary care as a matter of law, and summary judgment should have been awarded to Lowery's Tavern, Northeast Sales and Scott.

It is well established that even assuming the defendants had reason to know that the elevator shaft posed a risk of harm to a licensee who was known to be or expected to come upon the premises, Dudukovich cannot recover if he could have avoided injury to himself by the exercise of ordinary care. See OCGA § 51-11-7. "The [plaintiff] must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the [defendants'] negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it. He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." (Citations and punctuation omitted.) *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). Although the issue of Dudukovich's exercise of due diligence for his own safety is ordinarily reserved for the jury, it may be summarily adjudicated where his knowledge of the risk is clear and palpable. *Wells v. C & S Trust Co.*, 199 Ga. App. 31, 32 (403 SE2d 826) (1991) (summary judgment affirmed where tenant walked down unlighted stairway rather than take an alternative safe means of egress that was readily accessible). This case is distinguishable from *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), where the plaintiff was an invitee walking down a lighted and publicly traveled supermarket aisle.

In determining that the issue of Dudukovich's exercise of ordinary care was a jury question, the trial court cited *Brennan v. Freight Room*, 226 Ga. App. 531, 534 (2) (487 SE2d 109) (1997). However, in *Brennan*, there was "a disputed issue of fact as to whether an alternative safe means of egress was readily accessible to appellant." Id. There is no such question in the present case. Dudukovich admits

that he had never before been in the alley and that the most direct route to the other club would have been to walk straight down the illuminated public sidewalk which he and Larimer left.

The case of *Gaydos v. Grupe Real Estate Investors*, 211 Ga. App. 811, 813 (440 SE2d 545) (1994), clearly imposes an increased degree of caution on the plaintiff who elects to depart from a safe path, and such increased caution is to be commensurate with the increased risk associated with the election. In *Gaydos*, summary judgment for the defendant was affirmed where the plaintiff took a shortcut across a lawn rather than using a concrete walkway. While the plaintiff argued the defect was not visible, we held that the plaintiff's failure to react to the diminished visibility and conduct herself accordingly constituted a failure to exercise ordinary care for her own safety. Id. This Court has repeatedly cited and followed the principles established in *Gaydos* in cases where the plaintiff has deviated from a safe travel route and voluntarily traversed a more dangerous path. See *Farmer v. Wheeler/Kolb Mgmt. Co.*, 224 Ga. App. 834, 836 (482 SE2d 475) (1997) (summary judgment affirmed where pedestrian tripped over concrete as she was cutting across parking lot through parked cars rather than through the aisle of the parking lot); *MARTA v. Fife*, 220 Ga. App. 298, 301 (2) (469 SE2d 420) (1996) (denial of summary judgment reversed where plaintiff stepped off curb into drainage culvert when MARTA provided an area for picking up passengers but the plaintiff chose to use the street instead).

Dudukovich attempts to distinguish those cases holding that a person who proceeds in the darkness does so at his own risk by arguing that only "anticipated" risks are covered by this rule. He would have this Court assess various risks he contends are reasonable to expect when entering an alley. However, any number of dangerous conditions might exist in an alley due to the trespasser/licensee's unfamiliarity with the plan, function, and design of the alley. Clearly, the plaintiff in *Pries v. Atlanta Enterprises*, 66 Ga. App. 464, 468-469 (17 SE2d 902) (1941), did not expect that, upon opening a door to a darkened room, he would find there was no floor in the room. Yet, we affirmed the trial court's grant of summary judgment in that case because the risk of entering the room was "plainly obvious." Id. at 469.

In accordance with *Gaydos* and related cases, Dudukovich was charged with the duty to exercise a heightened degree of attention for his own safety and assumed whatever heightened risks were associated with unnecessarily departing from the well-lit, public sidewalk and detouring into an unfamiliar, dark, debris-filled alley. He observed the contents and condition of the alley, he heard the doubts expressed by Larimer, yet he continued down the alley and ultimately opened a door in the side of a building and voluntarily

entered an even darker doorway. The risk of falling is certainly a foreseeable consequence of entering into a dark alley and a dark and unfamiliar building. Under these circumstances, Dudukovich is barred from recovery due to his failure to exercise ordinary care for his own safety.

Under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), if a defendant who moves for summary judgment can point out by reference to the affidavits, depositions, and other evidence of record that there is no evidence sufficient to create a jury issue with respect to at least one essential element of the plaintiff's case, viewing all evidence and reasonable inferences therefrom in a light most favorable to the nonmoving party, without the necessity of weighing the evidence or determining the credibility of the witnesses, such defendant is entitled to summary judgment unless the plaintiff can come forward with specific evidence giving rise to a triable issue. In support of their motions for summary judgment, Lowery's Tavern, Northeast Sales, and Scott all presented evidence that Dudukovich failed to exercise ordinary care for his own safety. A review of the record reveals no facts or reasonable inferences which may be drawn therefrom sufficient to raise a triable issue of fact as to this point. Accordingly, the trial court erred in denying summary judgment to the three defendants.

4. In light of our holding in Division 3 of this opinion, the remaining enumerations of error are moot.

*Judgment reversed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 13, 1998 —

*Goodman, McGuffey, Aust & Lindsey, William S. Goodman, Leslie S. Sullivan*, for appellant (case no. A98A1088).

*Drew, Eckl & Farnham, Stevan A. Miller, Scott P. Archer*, for appellant (case no. A98A1089).

*Mozley, Finlayson & Loggins, Robert M. Finlayson II, R. Ann Grier*, for appellant (case no. A98A1090).

*Powell, Goldstein, Frazer & Murphy, William V. Custer IV, Christopher P. Galanek, Tricia A. Kinney, Mitchell & Shapiro, Richard C. Mitchell, Holland & Knight, Joseph D. Wargo*, for appellee.