**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 24, 2026

# In the Court of Appeals of Georgia

A26A0421. SCOTT et al. v. EVANS DELIVERY COMPANY, INC. et al.

BARNES, Presiding Judge.

In concluding that the doctrine of avoidable consequences was a complete bar to recovery in this complaint for negligence resulting in the death of Alexander Scott, the trial court granted summary judgment to Evans Delivery Company, Inc., and Marvin Colbert (hereinafter, "the Defendants"). On appeal, Lanea Scott, individually and as Administrator of the Estate of Alexander Scott (hereinafter, "Scott"), contends that fact questions remain regarding whether Alex Scott could have avoided the accident, thus precluding summary judgment under the avoidable consequences doctrine. Scott also contends that the evidence showed that the Defendant's conduct was willful and wanton such that the grant of summary judgment was erroneous.

Upon our review and for the reasons that follow, we reverse the trial court's judgment.

On a motion for summary judgment under OCGA § 9-11-56,

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law[.] A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Thus, the rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623-624 (1) (a) (697 SE2d 779) (2010).

So viewed, the evidence demonstrates that on September 13, 2022, Colbert, an owner-operator of a tractor-trailer, was hauling a 53-foot container for Evans Delivery. While driving from Savannah to Macon, at approximately 8 pm, his tractor-trailer begin to decelerate, but he was able to turn on his emergency flashers and pull off the right lane into the emergency lane of Interstate 16 before the engine cut off. The truck stopped near the next exit ramp, or as the trooper who investigated the accident testified, "right there at [the exit]." Although Colbert was parked in the emergency lane, a portion of the trailer extended approximately two feet over the fog line into the right lane of travel. According to Colbert, while parked on the shoulder, his emergency flashers remained engaged and he placed three orange warning triangles behind the trailer. Colbert deposed that the first triangle was ten paces from the trailer, the second was placed 100 paces from the first triangle, and the third was placed 100 paces from the second triangle. Although Colbert called his partner for assistance, his partner was unable to repair the truck, but planned to return the next morning with a part needed for the repair. Colbert testified that he attempted to have the truck

towed, but was unsuccessful locating an available towing service. Colbert stayed with the vehicle overnight and slept in a berth in the truck.

At approximately 5 a.m., the next morning, a tractor-trailer driven by Alexander Scott ("Alex Scott") collided with the left rear edge of Colbert's trailer. The impact caused Alex Scott's truck and attached trailer to catch fire, and the responding trooper later indicated on his report that "the truck and trailer were unidentifiable." Alex Scott escaped from his truck but died at the scene from injuries caused by the crash. A dashcam containing video of the minutes leading up to the collision was recovered at the crash site.

According the responding trooper's report and testimony, based on his investigation of the accident scene, Alex Scott had failed to maintain his lane which caused him to crash into the Defendants' truck. More specifically, according to the trooper's report, the video evidence recovered from Alex Scott's dashcam of the minutes leading up to the accident and the accident, "revealed that [Alex Scott] failed to maintain lane and crossed the white fog line and struck the rear of the disabled truck's trailer."

4

One of Scott's experts in accident reconstruction testified that at the time of the impact, Alex Scott's truck was "on or about the fog line and the lane paved edge," and that approximately two feet of the left side of the Defendants' trailer extended into the slow lane of travel on the highway. When questioned about whether his opinion about the location of the Defendants' truck was informed by the video recovered from the dash cam, another of Scott's experts, a former state trooper and accident reconstructionist, testified that he "couldn't tell heads or tails of where Mr. Colbert's truck was parked from it. It's very blurry."[1] According to the expert, his opinion about the truck's location was based on the photographs taken by the investigating state trooper. The expert opined that, contrary to the trooper's finding that Colbert's trailer was entirely in the emergency lane, "my opinion … is that the left rear corner of [Colbert's] trailer was actually in the lane of travel."

Lanea Scott, the surviving spouse, brought the underlying complaint, individually and as the administrator of Alex Scott's estate, alleging a claim of negligence against Colbert for, among other things, stopping his tractor-trailer on the

---

[1] The expert referred to a second video of the collision that he had not yet viewed, but it is unclear from the context whether he is referring to an enhanced copy of the original video or an entirely separate video of the collision.

shoulder of the road, impeding the right lane of travel, driving with reckless disregard, and failing to exercise due care. Scott's claim against Evans Delivery alleged that the company was responsible for Colbert's negligence, as well as independently negligent in that it, among other things, hired Colbert and failed to train, monitor, and supervise him regarding tractor trailer breakdowns.

The Defendants filed their answers and asserted various defenses, including that Alex Scott was negligent and could have avoided injury by the exercise of ordinary care. The Defendants also asserted counterclaims, including that Alex Scott had negligently operated his tractor trailer by leaving his lane of travel and colliding with the rear of Colbert's trailer.

Following discovery, the Defendants filed a motion for summary judgment, contending, among other things, that the affirmative defense of avoidable consequences precluded Scott's recovery. In support of their contention, the Defendants relied, in large part, on the video from the dashcam in Alex Scott's truck allegedly showing that he had failed to use ordinary care to avoid colliding with Colbert's trailer by not maintaining his lane prior to the collision and also failing to perceive and react to the presence of Colbert's vehicle in the emergency lane. The

6

Defendants asserted that the video provided the "best evidence" of the fact that Alex Scott had failed to maintain his lane and also that Colbert's truck was clearly visible before the crash and that Alex Scott should have seen it and avoided it before the collision.

In its subsequent order granting the Defendants' motion for summary judgment, the trial court's findings of fact included that, Colbert's trailer protruded into the right lane of travel by approximately two feet; the warning triangles were not placed at the proper distance behind Colbert's trailer, but the dashcam revealed that nothing obstructed Scott's view of the triangles; Scott drove onto the white fog line at the time of the impact; Colbert's warning lights were activated and flashing and visible to Scott, with the video showing that "the flashing lights were visible approximately 14 seconds before impact;" and that Scott made no evasive movements to avoid the collision, and "[h]e did not reduce his speed; at the time of the collision he was traveling 70 MPH."

The trial court concluded that even assuming that all of Scott's allegations of negligence against the Defendants were true, the Defendants' affirmative defense of

"avoidable consequences is dispositive and requires judgment in [the Defendants']

favor." The trial court found conclusive the Defendants evidence that

> despite Colbert's flashing lights and triangle warning devices, in the
> seconds before the collision, Alex Scott did nothing to avoid the tractor-
> trailer parked on the side of the interstate. In other words, Alex Scott
> failed to exercise ordinary care for his own safety after the trailer's
> warning devices – flashing lights and reflective triangles– became visible.

The trial court further found the cases cited by Scott in response unpersuasive

and distinguishable in that, in this case

> there is a video that shows Alex Scott's view in the moments prior to the
> collision. The evidence presented establishes as a matter of law that Alex
> Scott failed to exercise ordinary care to avoid the consequences of the
> Defendants' alleged negligence. Some of Scott's arguments are blatantly
> contradicted by a videotape of the incident (quotation marks excluded).

Moreover, the trial court held, "the video establishes conclusively that the

[Defendants'] parked trailer was visible more than 10 seconds before the collision and

that Alex Scott did nothing to avoid this stationary vehicle." With that being so, the

trial court concluded that,

> [i]n the exercise of ordinary care, Alex Scott should have learned that
> Colbert's trailer encroached into his lane of traffic. The evidence, in a

light most favorable to Scott, is that the warning triangles were on the white fog line. Nothing obstructed Alex Scott's view of the flashing lights and triangles. ... Alex Scott should not have ignored the warning cue of Colbert's flashing lights.

The trial court also found that there was no evidence of the Defendants' willful or wanton conduct. Scott appeals from that order.

On appeal, Scott contends that the trial court erred in finding that the affirmative defense of avoidable consequences precluded Scott's claims of negligence and required judgment in favor of the Defendants. Scott asserts that fact questions exist about when Alex Scott could or should have apprehended the actual hazard at issue. Further, he maintains, the avoidable consequences rule does not apply until the person "sees the danger or has reason to apprehend it." See *Newman v. Collins*, 186 Ga. App. 595, 596 (1) (a) (367 SE2d 866) (1988) (clarifying that the "doctrine of 'avoidable consequences' does not rest upon the idea that defendant is relieved of any duty toward plaintiff, but denies recovery for any damages which could have been avoided by reasonable conduct on plaintiff's part" and "involves the failure to take action to overcome defendant's negligence after it is actually discovered by plaintiff or might have been discovered by plaintiff's exercise of ordinary care"). Moreover,

Scott asserts, even after discovery or a reasonable time within which discovery of the negligence should have been made, the person "must have had an opportunity to avoid the negligence of the defendant."

"It is well settled that "[n]egligence is not actionable unless it is the proximate cause of the injury." *Ga. Dept. of Transp. v. Owens*, 330 Ga. App. 123, 130 (2) (766 SE2d 569) (2014) (citation and punctuation omitted). "Proximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." Id. (citation and punctuation omitted). Under the doctrine of avoidable consequences, "[i]f the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." OCGA § 51-11-7. Thus, the plaintiff's negligence in failing to avoid the consequences of the defendant's negligence is deemed the sole proximate cause of the injuries sustained and, therefore, is a complete bar to recovery, unless the defendant wilfully and wantonly inflicted the injuries. *Chandler v. City of Lafayette,* 370 Ga. App. 46, 51 (b) (894 SE2d 65) (2023). See *Chrysler Corp. v. Batten*, 264 Ga. 723, 726 (3) (450 SE2d 208) (1994) ("Wilful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that

10

which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent.") (citations and punctuation omitted).

> As with other affirmative defenses, the defendants in this case may prevail
>
> by presenting evidence which establishes a prima facie affirmative defense. In so doing, the defendant, as the moving party seeking summary judgment, may not rely on inferences from the evidence presented, because: (1) the defendant would have such burden of proof at trial; and (2) the allocation of favorable inferences between the parties is a jury question. Once the defendant satisfies its burden of proof by presenting evidence to support each element of the affirmative defense, the same burden of proof it would have at trial, the burden of production of evidence shifts to the plaintiff, who will survive summary judgment in the same fashion that she would survive a motion for directed verdict at trial, i.e., by presenting *any* evidence which creates a jury issue on an element of the affirmative defense. However, if the plaintiff is unable to meet this burden of production, the defendant is entitled to summary judgment as a matter of law.

*Garrett v. Nations Bank*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997) (citations omitted).

Thus, here, the Defendants have the burden of coming forth with evidence, either at trial or summary judgment, that Alex Scott by ordinary care could have avoided the consequences to himself caused by the defendant's negligence. Although

11

the issue of whether the plaintiff exercised "due diligence for his own safety is ordinarily reserved for the jury, it may be summarily adjudicated where [the plaintiff's] knowledge of the risk is clear and palpable." *Lowery's Tavern v. Dudukovich*, 234 Ga. App. 687, 690 (3) (507 SE2d 851) (1998). However, "all reasonable inferences from the evidence presented must be given in favor of the plaintiff, as the nonmoving party; a trial court is precluded from drawing negative inferences against the plaintiff from evidence presented by a defendant on motion for summary judgment." *Garrett*, 228 Ga. App. at 115.

In challenging the trial court's findings with regard to the dashcam video, Scott notes the trial court's reliance on *Scott v. Harris*, 550 U.S. 372, 380 (III) (A), 127 SCt 1769, 167 LEd2d 686 (2007)*, which essentially concluded that video evidence that clearly and unambiguously depicts an event may be given conclusive weight and eliminate a factual dispute. In *Harris*, the Court reasoned that at the summary judgment stage,

> the mere existence of some alleged factual dispute between the parties
> will not defeat an otherwise properly supported motion for summary
> judgment; the requirement is that there be no genuine issue of material
> fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could

12

> believe it, a court should not adopt that version of the facts for purposes
> of ruling on a motion for summary judgment.

*Harris*, 550 U. S. at 380 (III) (A) (citation and punctuation omitted). The Court considered whether the appeals court had correctly found that there was a factual issue whether respondent was driving in such fashion as to endanger human life. Id. at 380-381 (III) (A). The Court found that "[r]espondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." Id. See *Smith v. Wal-Mart Stores East, LP*, 330 Ga. App. 340, 348(2)(b)(ii) (765 SE2d 518) (2014)(noting that a court should not adopt a version of the facts for purposes of ruling on a motion for summary judgment which is blatantly contradicted by a videotape of the incident), citing *Harris*, 550 U. S. at 380 (III) (A).

Despite such holding, Scott contends, the trial court is not given complete license to make conclusive factual determinations about what the video depicts, merely by the existence of the video, regardless of the quality. Particularly, he asserts, when, as here, the determination is based "on the grainy and disjointed dashcam

video." Doing so, Scott argues, usurps the role of the jury. Unlike *Harris*, he asserts, rather than a clear unequivocal depiction, the video here is "open to varying interpretations." When videos do not paint the entire picture and contain ambiguities that are subject to interpretation, Scott contends, then courts should construe the ambiguities in the video footage in favor of the plaintiff just as they construe all ambiguities in the written pleadings in the plaintiff's favor.

"The sole function of the court on a motion for summary judgment is to determine whether there exists a genuine issue of material fact. And even slight evidence giving rise to a triable issue of material fact will suffice to defeat summary judgment." *Albright v. Terminal Inv. Corp.*, 373 Ga. App. 798, 805 (1) (909 SE2d 672) (2024) (citation and punctuation omitted). Moreover, in so determining, we view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of Scott. See *Smith v. Ellis*, 291 Ga. 566, 567 (1) (731 SE2d 731) (2012). That said, in this case as there is video of the circumstances at issue, as in any material fact, ambiguities in the video are construed in Scott's favor. See *Baker v. City of Madison*, 67 F. 4th 1268, 1277 (III) (C) (11th Cir. 2023). And, "any discrepancies between the witnesses' testimony and the ... video evidence would be for a jury to resolve."

*Albright*, 373 Ga. App. at 804 (1) (finding fact issue where trial court found that "[t]he video fails to conclusively establish"... "fault … as a matter of law") (punctuation omitted).

In *Giddens v. Metropower, Inc.*, 366 Ga. App. 15 (880 SE2d 595) (2022), this Court reversed the grant of summary judgment in a personal injury case when we found that contrary to the characterization of the video by defendant and the trial court, although "the video obviously shows [the plaintiff] in the air coming off the flatbed, it does not clearly show whether that was a result of him voluntarily jumping off or being pushed or tripped up by the pipe." Id. at 19 (b). Noting that the angle and lighting of the video were not ideal, and that "[e]ven after enlarging the video and watching it multiple times, it remains unclear to this Court what caused [the plaintiff's] departure from the flatbed," we concluded that "[m]ore than one inference could be drawn, and thus the question must go to a jury. [The defendant] bears the burden of proving the affirmative defense ..., and it cannot do so as a matter of law with the video of the incident." Id.

Likewise, in this case, this Court has repeatedly viewed the video retrieved from the dashcam in Alex Scott's truck and we are unable to discern exactly what Alex

15

Scott should or should not have perceived when viewing the flashing lights, nor can we, unlike the trial court, find that the images depicted in the video were so blatantly obvious that to ignore them was, as a matter of law, negligent. If indeed, Alex Scott failed to exercise ordinary care for his own safety and to use ordinary care to avoid the consequences of the Defendant's negligence, it is not clearly evident from the dashcam video. "Except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached," the questions of "lack of ordinary care for one's own safety," and "lack of ordinary care in avoiding the consequences of another's negligence … are for the jury." *McCray v. FedEx Ground Package System*, 291 Ga. App. 317, 322 (1) (661 SE2d 691) (2008) (citation and punctuation omitted).

"Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy *itself de novo* that the requirements of OCGA § 9-11-56 (c) have been met." *Cowart*, 287 Ga. at 624 (emphasis supplied). Given our review of the dashcam video, we cannot say as a matter of law that those statutory requirements have been met for purposes of the grant of summary judgment under the circumstances here.

2. We need not address Scott's assertion that his negligence would not bar recovery because the Defendants' conduct was willful and wanton.

*Judgment reversed. Markle and Hodges, JJ., concur.*