## A99A1650. BROWN v. ALLIED PRINTING INK COMPANY.
(526 SE2d 626)

RUFFIN, Judge.

James Brown was fired from his job at Allied Printing Ink Company ("Allied") after he tested positive for cocaine during a random drug screen. Brown, who is black, sued Allied under Title VII of the Civil Rights Act of 1964,[1] alleging that the real reason Allied discharged him was because he had complained of race discrimination at work. The trial court granted Allied's motion for summary judgment, and Brown appeals. We affirm.

To win summary judgment under OCGA § 9-11-56, Allied had to show that there was no genuine issue of material fact and that the undisputed facts, taken in the light most favorable to Brown, warranted judgment as a matter of law in favor of Allied.[2] We review the trial court's summary judgment ruling de novo.[3]

Viewed in this light, the evidence showed as follows. Allied hired Brown in 1989 to work as a mill operator. Brown alleges that from the first day of his employment, he and other black employees "were constantly and consistently made the butt of racial jokes, slurs, and innuendo." Brown repeatedly complained to Allied's management, but the harassment continued. Brown later moved into a higher paying position as lab technician at Allied, but — he alleges — only after fighting for a race-neutral selection process.

In 1995, Allied adopted a Drug Free Workplace Program that, among other things, prohibited employees from having illegal drugs present in their bodies. The new program included random drug testing of employees "performing safety-sensitive job functions as deter-

---

[1] 42 USC § 2000e et seq.
[2] See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[3] *Swiss Bank Corp. v. Thomas, Conner & McDonald, P.A.*, 236 Ga. App. 890-891 (514 SE2d 68) (1999).

mined by Company management," and it provided that failing such test would subject the employee "to discipline up to and including discharge." Employees could challenge the test results or offer an explanation for a positive result, but management had sole discretion whether to accept an explanation or order a re-test. Although one objective of the program was to provide chemically dependent employees with access to counseling or rehabilitation programs, the new drug policy stated:

> It is . . . the responsibility of each employee to seek help BEFORE drug and/or alcohol-related problems lead to disciplinary action up to and including discharge of employment. Once a violation of this policy has occurred, seeking rehabilitative or counseling assistance will not necessarily lessen disciplinary action and may, in fact, have no bearing on the determination of appropriate disciplinary action.

The new drug policy was communicated to Brown.

Brown was chosen for random drug testing in May 1995. After consenting to the testing, which was performed by an independent company, he tested positive for cocaine. According to Vince Bonomo, the director of operations of the testing company, Brown's test sample "was handled in the ordinary course of our business and tested by the laboratory analysts in the same manner in which all other drug tests are conducted," in compliance with federal and state law. After receiving a written copy of the results of Brown's test, Allied's general manager, Gary Smith, called Bonomo to confirm that Brown had tested positive. Smith fired Brown the next day.

According to Brown, he was not, in fact, selected randomly for drug testing, but was "set up" by Allied. Brown asserts that he should not have been tested at all because his lab position was not safety-sensitive. He also claims that he does not use drugs and "therefore had ingested nothing that would have yielded the reported positive result." Brown requested a re-test, but states that he was given an impossible procedure to follow: he was to mail a request in writing, along with $125, to the company that performed the test; the request had to arrive within 24 hours; and the company would only re-test the same sample, not a new one. Brown did not try to follow the procedure. He contends that he told Smith he would do anything to keep his job, including take a drug rehabilitation course, but Smith replied, "[Y]ou're fired, go get a lawyer."

Brown also contends that Allied treated Tim Lynn, a white former employee who had a drug problem, differently than it treated him. Brown submitted an affidavit from Lynn, who averred that he had a cocaine problem that was disclosed to Allied, that he wanted

treatment, and that he went to Smith for help. With Smith's "full knowledge and assent," Lynn entered a six-week treatment program and then returned to work. About a week later, he became "totally fed up" with his working conditions and with problems unrelated to work and "walked off the job." Allied disputes Lynn's account, contending that it was not aware of Lynn's drug problem until the day he had a violent outburst at work, for which he was fired. It is undisputed that Allied did not have a drug testing program in 1989, when the incident occurred.

Allied moved for summary judgment, and the trial court granted the motion on the grounds that Brown failed to establish a prima facie case of race discrimination under Title VII and that Brown failed to show that Allied's legitimate, nondiscriminatory reason for firing him was a pretext for race discrimination.

1. Brown first argues that the trial court misinterpreted the Supreme Court's ruling in *Lau's Corp. v. Haskins* and applied an improper standard of review to Allied's summary judgment motion. Brown urges that he is entitled to survive summary judgment if he can show that there is a jury issue as to at least one of the essential elements of his claim. That, however, is not the law. Because the plaintiff bears the burden at trial of proving every essential element of his claim, a defendant is entitled to summary judgment if it shows that there is no evidence to support any *one* of those elements.[4] The trial court applied the proper standard.

2. Next, Brown argues that the trial court erred in ruling that he failed to establish a prima facie case of race discrimination under Title VII. We agree with Brown that the trial court used an inappropriate analytical framework to determine whether Brown established a prima facie case. Applying the proper framework, we nevertheless conclude that Brown failed to meet his burden.

In the absence of direct, "smoking gun" evidence of intentional discrimination, a Title VII plaintiff may prove such discrimination by proceeding under the burden-shifting framework outlined by the United States Supreme Court in *Texas Dept. of Community Affairs v. Burdine*[5] and *McDonnell Douglas Corp. v. Green*.[6] First, the plaintiff must establish a prima facie case of discrimination, the elements of which will vary depending upon the particular facts of the case and the nature of the alleged discrimination.[7] If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employ-

---

[4] See *Lau's Corp.*, supra.
[5] 450 U. S. 248 (101 SC 1089, 67 LE2d 207) (1981).
[6] 411 U. S. 792 (93 SC 1817, 36 LE2d 668) (1973).
[7] *Jones v. Gerwens*, 874 F2d 1534, 1538-1539 (11th Cir. 1989).

ment decision.[8] If the defendant carries this burden, then the plaintiff must prove that the articulated reason was really a pretext for discrimination.[9]

The trial court ruled that, in order to establish a prima facie case of discrimination, Brown had to show that Allied replaced him with a person who was not black. This is incorrect. In cases involving alleged bias in the application of discipline for violation of work rules, the plaintiff must show that (1) he is a member of a class protected under Title VII; (2) he was disciplined for violating a work rule; and (3) either (a) he did not violate the work rule, or (b) he engaged in misconduct similar to that of a person outside the protected class, but was disciplined more severely.[10] Contrary to the trial court's ruling, a plaintiff in a discriminatory discipline case need not prove that he was replaced by a person outside his protected class.

But Brown still failed to establish a prima facie case. Although he satisfied the first two elements, he did not satisfy the third. It is undisputed that Brown is black and thus a member of a protected class under Title VII, and that Brown was discharged for allegedly violating Allied's drug policy. Brown presented no evidence, however, that he did not violate the policy or that a similarly situated white employee was treated differently.

(a) Brown admits that his drug test was positive, but denies that it was "random." Although he asserts that he never should have been tested in the first place, Allied's drug program gave management the discretion to determine which positions were safety-sensitive so as to qualify for random testing. And despite Brown's claim that he was the first person "randomly" tested under the new policy, he admitted during his deposition that he paid no attention to whether other employees had been tested. Brown implies that Allied somehow "rigged" the test, but he put forth no evidence to counter the affidavit of Vince Bonomo that his testing sample was handled by an independent company in the ordinary course of business in the same way as all other samples. Simply because Brown was displeased with Allied's re-testing procedure does not mean that the test results were wrong. Brown opted not to get a re-test, either through Allied's procedure or on his own. In short, there simply is no evidence, beyond Brown's unsupported assertions, that the test was "rigged" or that the result was incorrect.

(b) Brown also failed to show that a white employee engaged in similar misconduct but was treated differently. Brown presented evi-

---

[8] Id. at 1538.
[9] Id.
[10] Id. at 1540; *Kut-Kwick Corp. v. Johnson*, 189 Ga. App. 500, 502-503 (1) (376 SE2d 399) (1988).

dence that Allied did not fire Tim Lynn, a white former employee with a known cocaine problem, but instead allowed him to enter a rehabilitation program and return to work. For the purpose of summary judgment, we assume Brown's version of events to be true. Although Brown was not required to show that he and Lynn engaged in *identical* misconduct, he did have to prove sufficient similarity between the two situations to permit a meaningful comparison.[11]

Several key differences between Brown's situation and that of Lynn, however, prohibit a meaningful comparison. The incident concerning Lynn occurred years before Allied adopted its Drug Free Workplace Program prohibiting employees from having illegal drugs present in their bodies and providing that a positive drug test result could result in termination. And, unlike Brown, Lynn never failed a company-ordered drug test. Moreover, Lynn asked Allied for help before he was accused of any wrongdoing, whereas Brown did not offer to enroll in a rehabilitation program until after he was caught with drugs in his system. Under Allied's new policy, applicable to Brown, employees who want help with drug problems must seek help *before* a drug screen reveals drugs in their system. Thus, even though Lynn had a drug problem, he did not violate a company policy subjecting him to discharge, and he took the initiative in seeking help for his problem. Because Brown and Lynn were not similarly situated,[12] Allied's more lenient treatment of Lynn cannot establish the third element of Brown's prima facie case.

Because Brown failed to establish a prima facie case of race discrimination, the trial court properly granted Allied's motion for summary judgment.

3. In light of our decision in Division 2, we need not address Brown's remaining enumerations of error.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED DECEMBER 6, 1999.

*Raymond J. O'Reilly,* for appellant.
*Webb, Tanner & Powell, Robert J. Wilson,* for appellee.

---

[11] See *Jones,* supra at 1540-1541.

[12] See *Chaney v. Southern R. Co.,* 847 F2d 718 (11th Cir. 1988) (plaintiff, who was caught smoking marijuana at work, was not similarly situated to employees who had admitted to off-duty drug use); *Grooms v. Wiregrass Elec. Cooperative,* 877 FSupp. 602 (M.D. Ala. 1995) (defendant's drug policy required testing of holders of commercial driver's licenses; commercial driver who failed test and was fired was not similarly situated to employees with drug problems who were not fired and did not hold commercial driver's licenses).