## A00A1205. LEAL v. HOBBS et al.
(538 SE2d 89)

RUFFIN, Judge.

Darryl Hobbs died after a cardiac arrest in an ambulance en route to Grady Hospital. His widow, Sherry Hobbs, brought this wrongful death action against Jacob Leal, a student intern riding along in the ambulance, as well as other defendants. The trial court denied Leal's motion for summary judgment, and he appeals. Because Ms. Hobbs failed to present evidence that Leal acted negligently, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the undisputed facts, taken in the light most favorable to the nonmoving party, warrant judgment as a matter of law in favor of the moving party. Our review is de novo.[1]

The record shows that on June 23, 1996, police stopped Hobbs and used pepper spray to subdue him. Police called for an ambulance and reported that Hobbs appeared to be having a seizure. A Grady Hospital ambulance arrived with Ron Puckett, a paramedic; Pamela Ray, an Emergency Medical Technician (EMT);[2] and Leal, who was training to become a paramedic. Hobbs was lying facedown on the ground wearing handcuffs and a leg restraint. He was talking incoherently, but showed no signs of any breathing difficulty. Puckett decided to take Hobbs to the hospital because he felt that Hobbs' incoherent speech indicated an "altered mental status." Hobbs was placed on his stomach on a stretcher, still handcuffed, and loaded into the ambulance. Leal testified that he saw a bag containing a powdery substance at the scene and suspected that Hobbs' condition might be drug-related.

Inside the ambulance, Puckett attached a heart monitor to Hobbs while Leal tried to take his blood pressure. Before Leal could obtain a reading, however, the heart monitor indicated that Hobbs' heart rate had dropped dangerously low, so Hobbs was uncuffed and turned over onto his back. At some point, Hobbs suffered a cardiac arrest. Puckett and Ray gave Hobbs oxygen, intubated him, and started an IV. At Puckett's direction, Leal administered three different drugs — atropine, epinephrine, and Narcan — to Hobbs through the IV. The first two drugs were intended to increase Hobbs' heart rate, while the third drug was meant to counteract the effects of opiates.

---

[1] *Brown v. Allied Printing Ink Co.*, 241 Ga. App. 310 (526 SE2d 626) (1999).

[2] Both paramedics and EMTs must be certified to work in Georgia, and the services they may perform are regulated by the Department of Human Resources. See Ga. Admin. Code Ch. 290-5-30. Paramedics have more training and are authorized to perform more procedures than EMTs.

Hobbs died. The Fulton County Medical Examiner concluded that he died of "acute intoxication by a combination of cocaine and heroin."

At the time, Leal was a student in the paramedic training program at Ricks College in Idaho. To fulfill the program's requirement that he complete 360 hours of paramedic training, Leal was serving for eight weeks as an unpaid student intern at Grady. Although Leal had fulfilled all the requirements necessary to be an EMT — and, in fact, had received specialized additional training — he had not obtained his Georgia EMT license on the day Hobbs died.[3] According to both Leal and Puckett, Leal was supposed to participate in providing medical treatment as part of his internship — but only under the supervision of a licensed paramedic, or "preceptor."

On the day Hobbs died, Puckett was acting as Leal's preceptor. Leal testified that he acted under the direct supervision of Puckett and did exactly what Puckett told him to do. According to Leal, Puckett closely monitored his administration of drugs to Hobbs: "I would take the drug, I would fill it, and I would show him the drug, and he would nod. And so I would draw it up, show him how much I drew it up, and put it in the patient, and he watched while I was putting it in the patient."

Ms. Hobbs sued Puckett, Ray, Leal, Fulton-DeKalb County Hospital Authority, and the police officers who arrested Hobbs. She claimed, among other things, that Puckett, Ray, and Leal failed to follow Grady's policies and procedures with respect to patients sprayed with pepper spray and "fail[ed] to exercise reasonable care in the assessment, treatment and transport of Hobbs." Leal sought summary judgment on the grounds that the complaint did not allege that he had performed any negligent acts himself and that he was not an employee, agent, or independent contractor of Grady. The trial court denied the motion for summary judgment, ruling that genuine issues of material fact existed as to whether Leal violated Grady's policies and whether he was an independent contractor or agent of Grady. We granted Leal's application for interlocutory appeal.

1. Initially, we note that whether Leal was an employee, independent contractor, or agent of Grady Hospital is irrelevant to Leal's liability. Under Georgia law, a hospital may be held vicariously liable for the negligent acts of its employees, contractors, or agents.[4] But

---

[3] Leal obtained his EMT certificate the month after Hobbs died and later obtained his paramedic certificate. Although obtaining an EMT certificate is not a prerequisite for certification as a paramedic, Puckett testified that it is a normal practice in Georgia for paramedics to also be certified as EMTs.

[4] See OCGA § 51-2-5; *Brown v. Coastal Emergency Svcs.*, 181 Ga. App. 893, 894-898 (2), (3) (354 SE2d 632) (1987).

the doctrine of vicarious liability does not make the agent liable for the acts of the principal.[5] As the issue before us is whether *Leal* was entitled to summary judgment, we are concerned only with whether Leal negligently breached a duty of care to Hobbs.

2. (a) In his motion for summary judgment, Leal argued that "there is no evidence of a breach of a duty of care by Jacob Leal" because he was simply following the instructions of Puckett and had no decision-making authority with respect to Hobbs' care and treatment. In response to Leal's motion, Ms. Hobbs argued that Leal acted negligently by violating Grady's policy concerning student ambulance riders. We disagree.

On the day in question, Grady had in effect a policy pertaining to "student/third riders," or "all persons requesting to act as an observer on any Grady EMS vehicle." Under this policy, such persons were to

> function in an observer only status. This decision is based on both the state regulations and the hospital's legal staff recommendations. The *ONLY* exception to this policy is with the Emergency Medical Residents. These individuals would be able to be involved in patient care, but it would remain the responsibility of the EMS crew to obtain any needed physician's order through the normal radio procedures.

(Emphasis in original.) Ms. Hobbs argues that this policy applied to Leal and prohibited him from rendering care to Hobbs. Leal, on the other hand, argues that the "observer only" policy did not apply to him because, by its terms, the policy applies only to students who "ride three times on 3 separate shifts, for a maximum of 30 hours total." According to Leal, the " 'observer only' policy does not accurately reflect the [unpaid] student paramedic internship program arrangement between Rick's College and Grady Hospital." Thus, there is a factual dispute as to whether Grady's "observer only" policy applied to Leal.

But assuming for the purposes of summary judgment that the "observer only" rule *did* apply to Leal, Ms. Hobbs fails to show how his violation of that rule breached any duty of care he owed to her husband. Citing *Central Anesthesia Assoc. v. Worthy*,[6] Ms. Hobbs argues that Leal's violation of the policy was negligence per se. In *Worthy*, we held that a nursing student who administered anesthesia to a patient committed negligence per se because she violated a stat-

---

[5] See *Mullinax v. Miller*, 242 Ga. App. 811, 815 (2) (531 SE2d 390) (2000) ("[P]laintiffs essentially seek to hold the *agent* . . . liable for the acts of the *principal*. . . . We find no support for this theory of liability in logic or in case law.").

[6] 173 Ga. App. 150, 152-153 (325 SE2d 819) (1984).

ute that provided that only "certified registered nurse anesthetists" could administer anesthesia, and then only under the supervision of a physician. But Ms. Hobbs did not argue before the trial court that Leal violated any *statute* — only an internal policy of Grady Hospital.[7] We find no authority for the proposition that violation of an internal policy can constitute negligence per se.

Not only has Ms. Hobbs failed to show that Leal's alleged violation of the "observer only" policy was negligence per se, she has failed to present any evidence of negligence at all. To prove that Leal acted negligently, Ms. Hobbs must show:

> (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.[8]

In the trial court, Ms. Hobbs merely asserted that the fact that Leal acted at all — as opposed to being an "observer only" — constituted negligence. She did not point to any specific actions or inactions by Leal that supposedly constituted a breach of due care. And she did not dispute Leal's testimony that he was working under Puckett's supervision, that he merely followed Puckett's orders with respect to treating Hobbs, and that he exercised no decision-making authority over Hobbs' treatment. Because Ms. Hobbs failed to present any evidence to the trial court that the treatment rendered by Leal was negligent, Leal was entitled to summary judgment.

(b) On appeal, Ms. Hobbs asserts for the first time that Leal was negligent in four other ways: (i) he was negligent per se because he administered treatment even though he was not licensed to do so; (ii) he failed to tell Puckett that he suspected Hobbs may have been under the influence of drugs; (iii) he helped place Hobbs facedown on

---

[7] We further note that Georgia's public health regulations allow paramedic trainees to perform any of the functions of a certified paramedic, as long as they are acting under the direct supervision of an approved preceptor. Ga. Admin. Code Rule 290-5-30-.14 (6). Those functions include the administration of "approved intravenous solutions" and other injections under the order of a physician. See Ga. Admin. Code Rule 290-5-30-.14 (3) (a), (5) (a). According to Puckett, the administration of atropine and epinephrine was part of Grady Hospital's policies and procedures for patients in cardiac arrest, and there was a standing doctor's order to administer Narcan to "incoherent people with altered mental status." Thus, Georgia's administrative code specifically authorized Leal, as a paramedic trainee, to render supervised care to Hobbs.

[8] (Punctuation omitted.) *Meinken v. Piedmont Hosp.*, 216 Ga. App. 252-253 (454 SE2d 147) (1995).

the stretcher, which inhibited Hobbs' breathing; and (iv) he failed to properly monitor Hobbs' breathing. But Ms. Hobbs did not make any of these arguments in the trial court. "This court will not consider arguments neither raised nor ruled on by the court below and that are asserted for the first time on appeal."[9]

Even if we did consider these new arguments, they lack merit. The first argument is plainly specious, in light of the Georgia public health regulations specifically authorizing paramedic trainees to perform certain functions under the supervision of a preceptor.[10] Ms. Hobbs does not argue that any of the functions performed by Leal were beyond the scope of a paramedic trainee's authority as set forth in the regulations.

As for Ms. Hobbs' other three newly asserted allegations of negligence, she does not explain *how* Leal's alleged actions deviated from any applicable standard of due care. She merely asserts — without elaboration and without evidence — that the actions amounted to negligence. For his part, Leal testified that he *did* monitor Hobbs' breathing and saw no breathing difficulties. Puckett testified that the ambulance crew placed Hobbs facedown on the stretcher for their own safety because they believed he had been fighting with police and that, to Puckett's knowledge, placing a patient facedown on a stretcher does not inhibit his breathing. Although Leal testified that he did not remember whether he told Puckett about the powdery substance he saw, Puckett testified that he learned from some source that drug abuse was indicated. In any event, Hobbs was given an injection of Narcan, which Puckett testified is standard treatment in suspected cases of drug abuse. In light of this evidence, Ms. Hobbs' bare assertions of negligence were insufficient to survive summary judgment.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED AUGUST 2, 2000 

*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Amy Greenstein, Julia B. Haffke*, for appellant.

*Shapiro, Fussell, Wedge, Smotherman, Martin & Price, Carol E. DeLoach, Parks, Chesin, Walbert & Miller, Walter H. Beckham III*, for appellees.

---

[9] *Busbee v. Chrysler Corp.*, 240 Ga. App. 664, 666 (1) (524 SE2d 539) (1999).
[10] See footnote 7, supra.