A08A0175. McCRAY et al. v. FEDEX GROUND PACKAGE SYSTEM, INC. et al.
(661 SE2d 691)

MIKELL, Judge.

Harold McCray fell and was injured when he stepped into a gap between the back of a parked trailer and a loading dock. McCray and his wife sued Marvin Sims, Sims Transportation, Inc., and FedEx Ground Package System, Inc. (the "defendants"), claiming that Sims's negligence in parking the trailer was the direct and proximate cause of his bodily injuries, medical bills, and lost wages. The trial

---

court granted the defendants' motion for summary judgment, and the McCrays appeal. We reverse because outstanding issues of material fact must be resolved by a jury.

1. To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1] Our review is de novo.[2] So viewed, the evidence shows that McCray worked as a warehouse manager for Regenboog Flowers. Sims regularly drove a truck hauling an empty FedEx trailer to the Regenboog warehouse and then swapped the empty trailer out for a loaded trailer. Between April 2, 2002 and April 4, 2002, Sims left a trailer at Regenboog's first loading dock, which was reserved for FedEx. The loading dock was equipped with two rubber bumpers. Before leaving, Sims parked the trailer at an angle so that although one side of the back of the trailer touched a bumper there was a gap of eight inches or more between the bumper and the trailer on the other side.

According to Sims, he was taught to park the trailer so that it was touching, or "flush," with the bumpers, although if the trailer was not flush with both bumpers it might nevertheless be properly parked. Sims admitted that a six- to eight-inch gap, however, was not normal. 99.9 percent of the time, Sims deposed, he would park the trailer straight and no one would complain. According to McCray's co-worker, Carol Berg, the trucks were usually parked against the two rubber bumpers, and "that's how they park 'em." Tom Cramer, the operations manager for FedEx, deposed that "ideally" a trailer should be parked against both bumper guards. According to Cramer, if a trailer were parked a foot off, "it wouldn't be acceptable at all."

McCray as well as all other Regenboog employees were charged with looking out for their own safety. McCray, as the warehouse manager, also "made sure [his] people were safe." According to Frank Nuss, Regenboog's production manager at the time of the incident, the warehouse manager's duties included inspecting trailers to ensure they were safe for loading and unloading.

Shortly after coming to work on April 4, 2002, McCray grabbed several boxes so that he could begin loading the FedEx trailer. This was McCray's first time in the area that day. Nuss deposed that he had been out to the dock several times beforehand on the day that McCray was injured, and that he did not see the gap between the trailer and the dock. Berg was in the immediate area at the time of

---

[1] OCGA § 9-11-56; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] *Pyle v. City of Cedartown*, 240 Ga. App. 445, 446 (524 SE2d 7) (1999).

McCray's injury, and she did not see anything out of the ordinary before he fell.

Because the truck had backed up to the door, there was hardly any light. Available at the warehouse was a "swing arm lamp" that when in use would illuminate the entire trailer. Also available was a dock plate that could bridge a gap between the trailer and the dock. McCray did not use either device before attempting to load the trailer. He deposed that the lamp "didn't work when it was there," and that the docking plate was never used to load a FedEx truck because it was only used in conjunction with a forklift. Nuss, who had also worked as the Regenboog warehouse manager, deposed that if there were a space between the trailer and the dock he would have used the dock plate or had the trailer moved, "but I don't recall ever having to do that."

On his first attempt to load the truck, McCray stepped into the gap between the dock bumper and the trailer and was injured when his leg fell through up to the thigh. According to McCray, his view to the floor of the dock and trailer was blocked by the boxes he was carrying, and he did not see the space between the trailer and the dock floor. McCray had loaded trailers numerous times, and the gap between the trailer and the dock floor was normally "very little." Even if a trailer was properly parked, there was a space between the dock and the trailer which was not covered by the bumpers; however, McCray averred that if the trailer were properly parked "you could actually step on the gap and your foot would bridge that gap," and that the gap did not pose a tripping hazard.

In order to establish a negligence claim, the McCrays must show:

(1) A duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks. (2) A failure on his part to conform to the standard required[.] (3) A reasonable close causal connection between the conduct and the resulting injury[.] (4) Actual loss or damage resulting to the interests of the other.[3]

However, "[i]f the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."[4] In other words, a plaintiff's

---

[3] (Citation and punctuation omitted.) *Lau's Corp.*, supra at 492.
[4] OCGA § 51-11-7.

negligence in avoiding the perilous situation created by the defendant after it is or should have been plain to him while he still had an opportunity to avoid it will, as to such negligent plaintiff, render him the sole author of his misfortune and thus, as to him, will constitute the sole proximate cause of his injuries.[5]

We first consider whether there is an issue of material fact as to Sims's breach of a legal duty. The defendants contend that there is no statute or regulation requiring that he align the trailer perfectly against the loading dock. However, the McCrays introduced evidence of a standard of conduct to which Sims was expected to conform in order to protect others against unreasonable risk of harm. Testimony showed that by custom and training, Sims was expected to park the trailer so that it touched both loading dock bumpers, and that if a driver left an excessive distance between the trailer and the dock then this would be unacceptable performance of his duty.[6] A jury could conclude that Sims breached this standard of conduct in light of the evidence showing that he parked the trailer so that there was a gap of eight inches or more between the dock bumper and the trailer, thus subjecting those persons loading the trailer to an unreasonable risk of harm.[7]

Also at issue is whether, as a matter of law, McCray could have avoided the consequence of the defendant's negligence because he unreasonably exposed himself to a hazard of which he knew or in the exercise of ordinary care should have known.[8] Although McCray did not look where he was placing his foot when he began loading the trailer, this does not conclusively establish a lack of ordinary care for his own safety.[9] As defendants acknowledge, "[e]vidence from the

---

[5] *Atlantic Coast Line R. Co. v. Coxwell*, 93 Ga. App. 159, 165 (2) (91 SE2d 135) (1955).

[6] See, e.g., *Bills v. Lowery*, 286 Ga. App. 301, 303 (1) (648 SE2d 779) (2007) (defendant's training and experience may be considered in determining whether his conduct constituted negligence); *Prillaman v. Sark*, 255 Ga. App. 781, 783 (567 SE2d 76) (2002) ("[e]vidence of industry safety standards and the failure to comply with such standards may be considered in gauging whether the defendant exercised a reasonable standard of care or was negligent") (citation and footnote omitted).

[7] See, e.g., *Tolbert v. Tanner*, 180 Ga. App. 441, 443 (2) (349 SE2d 463) (1986) (in negligence action, plaintiff required to show defendants "failed to do an act which ought to be done, or to perform properly what [they] undertook to perform") (citation and punctuation omitted).

[8] See generally *Robinson v. Kroger Co.*, 268 Ga. 735, 749 (2) (b) (493 SE2d 403) (1997).

[9] See *Kennestone Hosp. v. Harris*, 285 Ga. App. 393, 397 (2) (a) (646 SE2d 490) (2007) (as plaintiff was unaware of hazard of loose telephone books on loading dock floor – an area a reasonable person might believe to be free from debris – defendant was not entitled to summary judgment in slip and fall action).

plaintiff showing a legitimate reason why [he] did not discover the hazard supports a finding of ordinary care."[10]

Construing the evidence in a light most favorable to McCray, a jury could conclude that if the trailer was properly parked, the gap between the back of the trailer and the loading dock would be small enough not to constitute a hazard, and that Sims would, as a matter of established routine, park the trailer properly. The trier of fact could also conclude that the dangerous gap between the trailer and the dock on the day of the injury, which McCray's co-workers had also failed to notice although they had been in the area, was not readily visible from a distance; that McCray failed to see the gap on his first attempt to load the trailer because he was carrying boxes in the normal course of his job; and that he had no particular reason to anticipate that Sims had parked the trailer improperly. "A person cannot be charged with the duty of using any degree of care and [diligence] to avoid the negligence of a wrong-doer until he has reason to apprehend the existence of such negligence."[11] It follows that the jury could conclude that McCray had a legitimate reason for failing to discover the gap and thus exercised ordinary care for his own safety.

The evidence relied on by the defendants does not demand summary adjudication in their favor. Defendants contend that McCray had equal if not superior knowledge of the gap between the truck and the dock, but a jury could find that Sims knew or should have known that he parked the trailer at an angle, necessarily creating the gap. Furthermore, defendants' liability is not dependent on the superior knowledge of a premises owner or occupier, but on Sims's breach of his duty of care.[12] Defendants further contend that because McCray was the warehouse manager and responsible for safety in the warehouse, and that because he knew that trailers would sometimes not be correctly aligned against the dock, as a matter of law, he exposed himself to a hazard of which he knew or in the exercise of ordinary care should have known.[13] According to McCray, Sims sometimes, but not a lot, would fail to park the trailer flush with the bumpers, and "if it's not right we will yell: [Sims], it's not right. He will pull out and bring it straight." This evidence, while

---

[10] (Citation and punctuation omitted.) *Augusta Country Club v. Blake*, 280 Ga. App. 650, 656 (1) (c) (634 SE2d 812) (2006).

[11] (Citation and punctuation omitted.) *Southern Bell Tel. &c. Co. v. Bailey*, 81 Ga. App. 20, 23-24 (2) (57 SE2d 837) (1950).

[12] We note that the equal/superior knowledge rule "is the practical application of a rule that a knowledgeable plaintiff cannot recover damages if by ordinary care he could have avoided the consequences of defendant's negligence." (Citation omitted.) *Clark v. Carla Gay Dress Co.*, 178 Ga. App. 157, 160 (342 SE2d 468) (1986).

[13] See *Robinson*, supra.

tending to show that McCray was aware that Sims did not park perfectly on every occasion, also tends to show that any problem would be corrected before Sims left the warehouse and does not demand a finding that McCray had reason to be on the lookout for an excessive gap. Although McCray did have some safety responsibilities, and he may have failed to conform to company policy by not inspecting the trailer before loading, violation of an internal company policy is not negligence per se.[14] We cannot find, as a matter of law, that no prudent person would have acted as McCray did under the circumstances.

> Except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, questions of negligence, proximate cause, including the related issues of foreseeability, assumption of risk, lack of ordinary care for one's own safety, lack of ordinary care in avoiding the consequences of another's negligence, contributory and comparative negligence are for the jury.[15]

It follows that the trial court erred in granting summary judgment to the defendants.

2. In light of our disposition of Division 1, McCray's motion to file a supplemental brief — alerting us to a recent decision reaffirming *Robinson*[16] — is hereby denied as moot.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED MAY 1, 2008

*Teddy R. Price*, for appellants.

*Dennis, Corry, Porter & Smith, Grant B. Smith, Ronald R. Coleman, Jr.*, for appellees.

---

[14] *Leal v. Hobbs*, 245 Ga. App. 443, 446 (2) (a) (538 SE2d 89) (2000).

[15] (Citation and punctuation omitted.) *McDonald v. Coca-Cola Enterprises*, 220 Ga. App. 567-568 (469 SE2d 805) (1996) (it could not be said, as a matter of law, that it was unreasonable for worker to stick his hand between gap that was opening between loading bay wall and the trailer in order to signal the truck driver to stop). See generally *Pylant v. Samuels, Inc.*, 262 Ga. App. 358, 360-361 (2) (585 SE2d 696) (2003) (plaintiff's failure to see piece or smear of soap on bathroom floor on which he slipped did not establish that he failed to exercise reasonable care for his own safety as a matter of law); *Burnsed v. Spivey*, 52 Ga. App. 646, 649-650 (184 SE 410) (1936) (whether the plaintiff by the exercise of ordinary care could have avoided injury arising from collision with improperly parked truck was a question for determination by the jury).

[16] Supra.