**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 27, 2018**

# In the Court of Appeals of Georgia

A18A1338. SHERWOOD et al. v. WILLIAMS.                    PC-049

PER CURIAM.

Plaintiff Raldoman Williams was injured when a car lift in the shop where he was having his car repaired was lowered onto his foot. On appeal from a jury verdict in Williams's favor, the owner and operator of the shop, Arthur Sherwood, argues that the trial court erred when, inter alia, it denied his motion for judgment notwithstanding the verdict ("j.n.o.v.") and when it charged the jury as to the constructive knowledge of hazards including a foreign substance. We find no error and affirm.

On appeal from the denial of a motion for j.n.o.v., we will affirm the verdict if there is any evidence to support it. *Avion Systems, Inc. v. Bellomo*, 338 Ga. App. 141, 145 (2) (789 SE2d 374) (2016). An appellant seeking reversal of the denial of his

motion for j.n.o.v. must therefore show "that there was no conflict in the evidence as to any material issue and that the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought." (Citation and punctuation omitted.) Id.

Thus viewed in favor of the jury's verdict, the record shows that on February 10, 2010, Sherwood leased a portion of his auto repair shop, Reliable Auto Repairs, Inc., to Leroy Bather. Under the terms of the lease, Sherwood leased the "front repair and maintenance area[,] consisting of three (3) bays, office space, and rear parking" to Bather. The lease also required Bather to "hold [Sherwood] harmless from any liability or damage, whether caused by [Bather's] operations or otherwise[,]" and "to carry business liability insurance, including bodily injury and property damage coverage, covering all [of Bather's] business operations in the amount of $150,000[,] with [Sherwood] named as a co-insured party." Bather never obtained such coverage.

Sherwood and Bather shared the customer waiting area, and Sherwood used a desk in an office area included in the property leased to Bather. Sherwood continued to use all three car lifts on the shop floor during the Bather lease, and also retained the keys to the shop, which Bather could not open or lock himself. Although Sherwood testified that he knew that the shop was a dangerous place, he allowed customers to be present, as when he posted a sign directing male customers to go

across the floor to reach a restroom while reserving a second restroom, not accessible through the shop, for his own use.

On September 17, 2010, Williams came into the shop to get his car fixed. Because Sherwood was working on another car, Bather told Sherwood and Williams that he would look at the car "and tell Mr. Sherwood what was wrong so he could repair it." Bather then drove the car onto the middle of the three car lifts at the shop and raised the lift. Bather found an oil leak on the car and called Williams over to see it. After Williams saw the source of the leak, Bather lowered the lift from the front of the car, where the operator switch was, so that the two bars running parallel to the side of the car were resting on the ground. Bather then asked Williams to retrieve the dipstick from the car's trunk, where Williams had stored it because its handle had broken. Williams testified that because the two outside bars of the lift were resting on the shop floor, he did not know that as he attempted to retrieve the dipstick from the trunk, the middle bar, which ran perpendicular to the other bars and parallel to the rear of the car, was not "completely on the ground." As Williams reached into his trunk, Bather lowered the lift further so that the middle bar crushed Williams's foot.

In September 2011, Williams sued Sherwood and Reliable Auto for, inter alia, negligence, punitive damages, and attorney fees. Sherwood filed a third-party

3

complaint against Bather and moved for summary judgment, which was denied. At the close of Williams's presentation of evidence at trial, Sherwood moved for a directed verdict on the ground that no evidence authorized the conclusion that either he or Bather was negligent. Bather later moved for a directed verdict on the ground that the indemnification provision of the lease was unconscionable, while Sherwood asserted in his own motion for directed verdict that Bather was liable to him as a matter of law under the lease. The trial court denied these motions. The jury returned a verdict in favor of Williams in the amount of $125,000, with liability apportioned 2 percent to Williams himself, 33 percent to Sherwood personally, 33 percent to Reliable Auto, and 32 percent to Bather, and also finding that Sherwood and Reliable Auto were not entitled to recover any amount from Bather. The trial court entered judgment on the verdict. Sherwood and Reliable Auto then moved for judgment notwithstanding the verdict or for a new trial. The trial court denied this motion, and this appeal followed.

1. Sherwood first argues that the trial court erred in denying his motion for judgment notwithstanding the verdict because there was no evidence to support a finding of negligence by either himself or Bather. We disagree.

4

(a) *Duties of owners and occupiers*. The principles governing this case are well established. OCGA § 51-3-1 provides:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

"The nondelegable duty to keep one's premises safe requires that the owner or occupier must use ordinary care to guard, cover, or protect the dangerous or defective portion of the premises[.]" (Citation, punctuation, and emphasis omitted.) *Towles v. Cox*, 181 Ga. App. 194, 197 (1) (351 SE2d 718) (1997). Because this duty of exercising ordinary care is non-delegable, an owner will not be excused from liability for an injury occurring on his property unless he has delivered "full possession and complete control" of the premises to a third party. Id. at 196 (1).

The evidence outlined above was sufficient to create a genuine question of material fact as to whether Sherwood remained responsible for exercising ordinary care in keeping the premises safe for invitees such as Williams. Regardless of Sherwood's presence at the precise time of the accident, some evidence showed that Sherwood both retained control of the premises and authorized or encouraged invitees

5

to visit or remain on the shop floor, as when he directed all male customers seeking a restroom to walk through the shop. *Towles*, 181 Ga. App. at 195-196 (1) (a jury was authorized to resolve the question whether an out-of-town defendant had delivered full and complete control of the sidewalk where plaintiff was injured by a jackhammer operated by an independent contractor).

(b) *Breach of Duty.* In order for Sherwood or Bather to be held liable for negligence, "it is not necessary that [either] should have been able to anticipate the particular consequences which ensued. It is sufficient if, in ordinary prudence, [either] might have foreseen that some injury would result from his act or omission, and that consequences of a generally injurious nature might result." (Citation and punctuation omitted.) *Towles*, 181 Ga. App. at 197 (1). It is true that "where there are no conditions making the premises unusually dangerous, the law does not require the proprietor to provide a constant patrol." (Citation, punctuation and emphasis omitted.) Id. at 196 (1). But this is not a case involving a static defect undiscovered by an owner/occupier. Rather, it involves the use of a piece of heavy machinery capable of causing injury or death, with the use of such machinery being among those "'dangers foreseeable from the *arrangement or use* of the premises.'" (Emphasis supplied.)

6

*Hagadorn v. Prudential Ins. Co.*, 267 Ga. App. 143, 146 (598 SE2d 865) (2004), quoting *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997).

In *Towles*, for example, which involved the use of mobile heavy equipment and a jackhammer to remove asphalt, we concluded that the evidence authorized the jury to determine whether "defendants were on notice that the failure to take any precautions to protect their invitees on the adjacent sidewalk would result in some form of potential physical encroachment of the dangerous construction activity with an injurious result." (Citation and emphasis omitted.) Id. at 197 (1); see also *Murray Biscuit Co. v. Hutto*, 115 Ga. App. 870, 873 (1) (156 SE2d 132) (1967) (plaintiff was not required to prove defendant's actual knowledge of a hazard "because the duty to exercise ordinary care arose when the plaintiff's presence was discovered and he was known, or reasonably expected to be, within range of a dangerous act being done") (citation omitted). Here, a jury could likewise find from the evidence, including Bather's direction of Williams to reach into the trunk of the car as it was being lowered, that Sherwood and/or Bather possessed superior knowledge of the danger posed by the descending lift, and thus that "proper supervision" by Sherwood and/or Bather "could have prevented the occurrence" of Williams's injury. *Towles*, 181 Ga. App. at 197-198 (1) (citation and punctuation omitted).

7

(c) *Contributory Negligence*. It is clear that

> [e]xcept in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, questions of negligence, proximate cause, including the related issues of foreseeability, assumption of risk, *lack of ordinary care for one's own safety, lack of ordinary care in avoiding the consequences of another's negligence, contributory and comparative negligence[,] are for the jury*.

(Citations, punctuation and footnote omitted; emphasis supplied.) *McCray v. FedEx Ground Package System*, 291 Ga. App. 317, 322 (1) (661 SE2d 691) (2008); see also OCGA § 51-12-33 (g) (a plaintiff is barred from recovering "any damages if [that] plaintiff is 50 percent or more responsible for the injury or damages claimed"). As our Supreme Court has also emphasized, the question "how vigilant patrons must be for their own safety in various settings" is among those questions that, "in general, must be answered by juries as a matter of fact rather than by judges as a matter of law." *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 445 (2) (679 SE2d 25) (2009).

Sherwood points to Williams's apparent concession in closing argument that Bather "didn't do anything wrong," and asks us to conclude from this that Sherwood also had no role in causing Williams's injury. But even assuming that a statement in

8

closing argument can amount to an admission,[1] the jury found Williams two percent responsible for his injuries, and we are not entitled to substitute our judgment for the factfinder's when, as we have shown above, some evidence authorized the conclusion that Sherwood and/or Bather was at fault for some portion of Williams's injury. See *American Multi-Cinema*, 285 Ga. at 447 (3) (affirming the denial of summary judgment to a premises owner, and noting that an invitee "is not bound to avoid hazards not usually present on the premises and which the invitee, exercising ordinary care, did not observe") (citation and punctuation omitted).

2. Sherwood also asserts that the trial court erred when it denied his motion for judgment notwithstanding the verdict because undisputed evidence showed that Bather was liable for breach of contract and indemnity under the lease. Again, we disagree.

> The interpretation of a contract is normally a question of law to be resolved by the court, and the orders of the lower court in this case are therefore subject to de novo review. This review requires us first to decide whether the contract provisions at issue are ambiguous. If there

---

[1] See, e.g., *McKie v. State*, 345 Ga. App. 84, 86 (812 SE2d 353) (2018) (physical precedent only) (a party's statement in closing argument can amount to an admission of a fact in dispute).

9

is no ambiguity, then we simply enforce the contract according to its terms.

(Citations omitted.) *Willesen v. Ernest Communications*, 323 Ga. App. 457, 459 (1) (746 SE2d 755) (2013). "[T]he words of a contract of indemnification must be construed strictly against the indemnitee[,] and every presumption is against an intention to indemnify." (Citation and punctuation omitted.) *Firmani v. Dar-Court Builders*, 339 Ga. App. 413, 425 (4) (793 SE2d 596) (2016).

The lease at issue provided that Bather would "hold [Sherwood] harmless from any liability or damage, whether caused by [Bather's] operations or otherwise." The trial court ruled that the term "otherwise" was ambiguous, and therefore allowed the jury to decide whether Sherwood and Reliable Auto were entitled to recover from Bather or his company for the amount of any judgment entered against Sherwood and Reliable Auto. The jury found that Sherwood was not entitled to recover from Bather.

Longstanding Georgia law provides that "'contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered.'" *Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc.*, 281 Ga. 736, 737-738 (642 SE2d 695) (2007), quoting *Allstate Ins. Co. v. City of Atlanta*, 202 Ga. App. 692, 693

10

(415 SE2d 308) (1992); see also *Firmani*, 339 Ga. App. at 425 (4) (in order to be enforceable, an indemnification agreement must provide "expressly, plainly, clearly and unequivocally" that an indemnitor is responsible for an indemnitee's own negligence) (citation and punctuation omitted). Whether or not the lease is ambiguous in any other way, it does not expressly indemnify Sherwood for the consequences of his own negligence, with the result that Sherwood cannot show any error in the judgment entered on the jury's verdict denying indemnification to him. *Viad Corp v. U. S. Steel Corp.*, 343 Ga. App. 609, 616 (1) (808 SE2d 58) (2017) (reversing a grant of summary judgment in favor of an indemnitee when the agreement at issue did not expressly provide indemnity for the indemnitee's own negligence).

3. Sherwood also asserts that the trial court erred when it charged the jury on the subject of an owner/occupier's constructive knowledge of a foreign substance. We disagree.

"Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence." (Footnote omitted.) *Wall v. Hall*, 244 Ga. App. 61, 63-64 (1) (b) (534 SE2d 828) (2000).

11

The record shows that during the charge conference, Williams requested the pattern charge on actual and constructive knowledge of a hazard, and the trial court agreed. See Georgia Suggested Pattern Jury Instructions, Vol. I (Civil), § 60.625. The trial court later delivered the following charge:

> Now, while not an insurer of an invitee's safety, the owner or occupier is required to exercise ordinary care to protect the invitee from *unreasonable risks of harm* of which the owner or occupier . . . has superior knowledge. The owner or occupier owes persons invited to enter the premises a duty of ordinary care or to have the premises in a reasonably safe condition and not expose the invitees to *unreasonable risk*. The owner or occupier is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good businessperson is accustomed to use in such matters.
>
> The true brand of liability is the owner or occupier's superior knowledge of the *perilous condition* and the danger . . . therefrom to persons coming upon the property. It is when the *perilous condition* is known to the owner and . . . not known to the person injured . . . that a recovery is permitted. In order to prevail, a person injured . . . must prove by a preponderance of the evidence that the owner or occupier . . . had actual or constructive knowledge of the *hazard,* and that the Plaintiff lacked knowledge of the *hazard* for some reason attributable to the Defendant who was prevented from discovering it.

Now, to establish constructive knowledge, the plaintiff must show that, *one*, the Defendant or the Defendant's employee was in the immediate area of the *hazard* and could have easily seen *the substance*, *or, two*, the *foreign substance* remained long enough that ordinary diligence by the Defendant or the Defendant's employees should have discovered it. Constructive knowledge may be inferred by you, the jury, when there is evidence that the owner lacked a reasonable inspection procedure. Now, if the Plaintiff produces no evidence that the *substance* could have been discovered during a reasonable inspection, there is no inference arising that the Defendant's failure to discover the *defect* was the result of any alleged failure to inspect.

(Emphasis supplied.) At the conclusion of the entire charge, and outside the presence of the jury, Sherwood objected on the ground that the charge was not adjusted to the evidence because no evidence of any foreign substance had been introduced.

It is true that the giving of a charge can amount to reversible error when it requires the jury to make a finding that is not authorized by the evidence. See *Webb v. Perry*, 158 Ga. App. 409, 410 (280 SE2d 423) (1981) (when the evidence did not show that a defendant was in control of the car or its driver, a charge requiring the jury to find that there was a principal-agent relationship was not adjusted to the evidence, and a new trial was required). But we have often held that when a charge, taken as a whole, conveys that a certain legal theory applies only if the jury finds the

13

"necessary factual predicate" to the application of that theory, any error in the giving of the charge or recharge is harmless. *Wall*, 244 Ga. App. at 63, 64 (1) (b) (trial court's recharge to the effect that a loss-of-consciousness defense could "overrule the rules of the road as they apply to crossing the center of the road" was not harmful error); see also *Buice v. State*, 281 Ga. App. 595, 597 (2) (a) (636 SE2d 676) (2006) (where no evidence showed that a defendant committed battery by both of the two methods laid out in a charge, any error in giving a charge stating both methods was not harmful).

Here, the trial court gave an accurate recitation of the pattern charge, most of which spoke in general terms of a "perilous condition" or "hazard," including the dangerous machinery at issue here, but the last portion of which introduced the term "substance," applicable only to the smaller set of premises liability cases involving foreign substances. Further, the last section of the charge laid out two *alternative* scenarios – the first, that Bather was in the immediate area of the car lift and could have perceived the "hazard" posed by the lift to Williams, and the second, that a "substance" or "defect," whether or not discoverable by inspection, was the cause of Williams's injury. Williams never alleged or argued that he was injured as a result of an encounter with any foreign substance, and there was no evidence introduced at

14

trial to support such a theory of recovery. Under these circumstances, we cannot conclude that when considered as a whole, the charge, which was correct as an abstract statement of law, was likely to have confused the jury. *Wall*, 244 Ga. App. at 64 (1) (b).

*Judgment affirmed. Division Per Curiam. All Judges concur.*